# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-01205-SCT

*CITY OF MADISON*

*v.*

*STEVE BRYAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/28/1997 |
| TRIAL JUDGE: | HON. JOHN B. TONEY |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN HEDGLIN |
| ATTORNEY FOR APPELLEE: | STEVEN H. SMITH |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 05/11/2000 |
| MOTION FOR REHEARING FILED: | 5/25/2000; denied 7/20/2000 |
| MANDATE ISSUED: | 7/27/2000 |

**EN BANC.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

¶1. This case comes to this Court on appeal of the City of Madison (the City) regarding Steve Bryan's failed attempt seeking approval by the City to erect an apartment complex to be known as The Madison. After the City failed to act on Bryan's request for a building permit, Bryan appealed, by bill of exceptions, to the Madison County Circuit Court which initially ordered the City to approve Bryan's plan. However, the circuit court reversed its position and held the issue to be moot. Afterwards, the circuit court, applying Rule 11, awarded costs and attorney's fees to Bryan.

¶2. We find that the issue is indeed moot as Bryan did not have a valid option on the property at issue here when he filed his appeal to circuit court. The circuit court was correct to hold the issue moot, but it abused its discretion in awarding Bryan costs and attorney's fees. The City's defending its actions in circuit court and appealing to this Court were not frivolous, because "a pleading or motion is frivolous within the meaning of Rule 11 only when, objectively speaking, the pleader or movant has no hope of success." *Leaf River Forest Prods., Inc. v. Deakle*, 661 So. 2d 188, 195 (Miss. 1995). Here, it cannot be said that the City had no hope of success because the City ultimately prevailed, as Bryan had no valid option on the property at the time he filed his third bill of exceptions. It is also questionable whether Bryan met the requirements of Rule 11 or our caselaw which is necessary in order to prevail on the attorney fees issue. Whether the circuit judge in imposing damages against the City actually meant to apply authority other than Rule 11 is unknown,

but nonetheless is a legitimate issue. We decline to speculate regarding what authority the circuit court was applying to this case in awarding sanctions. We hold that the circuit court failed to set out sufficient findings of fact, conclusions of law, and clear authority pursuant to our case law in its order awarding costs and attorney's fees. We affirm the circuit court regarding the primary issue being moot, but reverse and remand for a new hearing on the costs and attorney's fees awarded to Bryan.

## FACTS

¶3. Steve Bryan attempted to obtain the approval of the governing authorities of the City of Madison to build an apartment complex within the City. There have been three bills of exceptions taken by Bryan to the Circuit Court of Madison County. The third bill of exceptions is the subject of this appeal (the previous two were not appealed further than the Circuit Court of Madison County). This appeal concerns a development or site plan for The Madison submitted by Bryan on March 18, 1994. A letter dated April 24, 1995, executed by Kenneth F. Pritchard, owner of the proposed project site of The Madison, indicates that Bryan's option to purchase contract expired on September 30, 1994. After the site plan was submitted, it was reviewed by the City's public works Director, Fire Chief and Southern Consultants, P.E. a project engineer specially employed by the City for this particular project. Their input resulted in the drafting of a revised development plan by Bryan. This revised plan was filed with the City's Planning and Zoning Director on June 8, 1995.

¶4. Pursuant to Madison Ordinance 2408.04, the plan was forwarded to Madison's Zoning and Planning Commission which, on June 12, 1995, met for approximately five to six hours and discussed the proposed plan in detail. At the close of the June 12 meeting, the Commission unanimously voted to approve the plan subject to the resolution of six (6) remaining "punch-list" items which would have to be resolved satisfactorily by Bryan.

¶5. The plan was placed on the agenda for the June 13, 1995, meeting of the Board of Aldermen and Mayor. Four of the City's five aldermen and the Mayor were present. As the governing body was about to consider Bryan's plan, the Mayor announced that she had decided to remove the item from the agenda and that no action would be taken regarding Bryan's plan. She insisted that she needed to have a transcript of the Planning Committee's meeting before passing on the merits of Bryan's plan.

¶6. Thereafter, three of the aldermen (a majority of the board present) voted to replace the item on the agenda. The Mayor then produced a typewritten "Statement of Objection and Veto" and read the same into the record. There were insufficient votes to override the Mayor's veto.

¶7. Aggrieved by the City's inaction, Bryan filed a bill of exceptions on June 23, 1995, and appealed to the Circuit Court of Madison County. On February 7, 1996, the court ordered the City of Madison to immediately issue Bryan a building permit and approve the site plan, staging plan and development plan.

¶8. Afterwards, acting on a Motion for Reconsideration on March 28, 1996, the circuit court reversed its prior ruling and held that the issue of the option was moot, as Bryan no longer had a valid option on the property which had since been sold to a third party. However, the circuit court preserved the rights of the parties as to claims for damages, if any. The circuit court, however, did not rule on the lone remaining motion of Bryan for attorney's fees.

¶9. Thereafter, on August 29, 1997, the circuit court did rule on Bryan's motion for attorney fees which was

filed on February 16, 1996. The circuit court awarded Bryan Rule 11 costs and attorney's fees in the amount of $19,668.45.

## STATEMENT OF ISSUES

¶10. The City appealed to this Court on September 26, 1997, presenting the following issues for review:

**I. UNDER MISSISSIPPI LAW, CAN BRYAN APPEAL AN ALLEGED FAILURE TO ACT BY THE GOVERNING AUTHORITIES OF A MUNICIPALITY TO CIRCUIT COURT?**

**II. WHERE A MUNICIPAL ORDINANCE IS SUBJECT TO LEGITIMATE DIFFERING INTERPRETATIONS, SHOULD THE INTERPRETATION OF THE CIRCUIT COURT SUPERCEDE THE INTERPRETATION OF THE MUNICIPAL GOVERNING AUTHORITIES?**

**III. DO THE GOVERNING AUTHORITIES "WAIVE" THEIR RIGHT TO REVIEW ANY ASPECT OF THE SITE PLAN, INCLUDING THE STAGING PLAN, BY REQUESTING ADDITIONAL INFORMATION RELEVANT TO THE PLAN?**

**IV. DID BRYAN HAVE STANDING TO PURSUE HIS APPEAL TO CIRCUIT COURT?**

**V. WAS THERE ANY LEGAL BASIS FOR THE CIRCUIT COURT JUDGE'S AWARD OF ATTORNEY'S FEES AFTER DISMISSING BRYAN'S APPEAL AS BEING MOOT?**

¶11. Bryan contests the City's argument of lack of standing and that the primary issue is moot. He also argued that the circuit judge was correct to award attorney's fees.

## ANALYSIS

¶12. Because the issues of standing and whether Bryan's interest in the property was moot control the outcome of the case at bar, only Issues IV and V warrant discussion.

## IV.

¶13. Much of the dispute centered around whether Bryan had fully complied with the City's strict zoning requirements regarding his site plan. Each time the aldermen acted, the Mayor vetoed that action, and Bryan appealed. Each instance was clearly a separate legislative act by the City. At the close of the June 12, 1995, meeting of the City of Madison's Zoning and Planning Commission, after a five to six-hour discussion, the plan was approved. However, the "resolution of six (6) punch-list items" by Bryan still remained. In other words, as of June 12, 1995, there still remained six items on the site plan with which Bryan had not complied.

¶14. At the meeting of the Mayor and Board of Aldermen on June 13, 1995, the Mayor remained concerned and wanted a transcript of the Zoning Commission's June 12th meeting prior to making a determination on this issue. A majority of the Board wanted to proceed, and the Mayor allegedly removed the consideration of the site plan from the agenda and vetoed the Board's action. Regardless, no action was taken on the site plan on June 13, 1995.

¶15. The subject of this third bill of exceptions promptly filed by Steve Bryan against the City of Madison concerns its refusal to approve the development or site plan which was submitted to the City on March 17, 1995. As previously noted, the Zoning Commission hearing was conducted on June 12, 1995. Bryan's approval by the Zoning Commission was scheduled for the City's June 13, 1995, meeting. However, Bryan's exclusive six-month contract of March 18, 1994, to purchase the property in question had apparently expired on September 30, 1994. The issues of standing, mootness and res judicata are all raised before this Court for consideration by the City of Madison.

¶16. The City argues that Bryan has "no standing when he has no present existent actual title or interest in the property." This Court has said that "[u]nder our authorities there must be a present, existent actionable title or interest which must be completed **at the time the cause of action is filed**."*Crawford Commercial Constrors., Inc. v. Marine Indus. Residential Insulation, Inc.*, 437 So. 2d 15, 16 (Miss. 1983) (emphasis added) (citing *American Book Co. v. Vandiver*, 181 Miss. 518, 178 So. 598 (1938)). *See also **Shaw v. Shaw***, 603 So. 2d 287, 294 (Miss. 1992). The City alleges that Bryan did not hold an option to purchase the site at issue at the time he filed his action. There is documentary evidence in this record which establishes that the six-month option contract had in fact expired on September 30, 1994.

¶17. This Court has assumed, without specifically being called upon to decide, that optionees have standing to challenge. *See **Moore v. Madison County Bd. of Supervisors***, 227 So. 2d 862 (Miss. 1969) (applicant for rezoning held option on land contingent on changing of zoning to commercial).[1] Thus, if Bryan's option had expired before he filed the appeal, then he does not have standing.

¶18. The City alleges that a letter dated April 24, 1995, and signed by Kenneth F. Pritchard, President of First Southeast Corporation, owner of the proposed project site, is record evidence that Bryan's option to purchase contract expired on September 30, 1994. Additionally, correspondence from the landowner indicates that Bryan's actions were in violation of his directive that Bryan cease making further representations to third parties regarding the use of the property which is at issue here. Therefore, the City argues that Bryan had no standing to file his bill of exceptions on June 23, 1995.

¶19. Bryan responds that he did have standing because he originally filed a site plan on March 18, 1994. Moreover, Bryan claims he entered into a contract (dated March 22, 1993) to purchase one-half of the property in question, which ran through April 1, 1995. Furthermore, Bryan alleges that only after the City refused to approve his original site plan submission was he required to enter the contract relied upon by the City above. Thus, he claims that the City is taking "advantage of the delay inevitably and lamentably attendant upon the appellate process so as to render moot, what would otherwise be a live and justiciable controversy."*City of Durant v. Humphreys County Mem'l Hosp.*, 587 So. 2d 244, 249 (Miss. 1991). Whether Bryan ever fully complied with required zoning and building requirements of the City has always been in dispute, and remained so at the very end of this controversy, as noted by the "punch list" of six items remaining to be complied with as late as the June 12, 1995 meeting of the Zoning Commission.

¶20. "Standing" is a jurisdictional issue which may be raised by any party or the Court at any time. *Williams v. Stevens*, 390 So. 2d 1012, 1014 (Miss. 1980). In order for Bryan to have standing in this matter, he must demonstrate that the City's action had an adverse effect on property in which he has an interest. **White Cypress Lakes Dev. Corp. v. Hertz**, 541 So. 2d 1031, 1034 (Miss. 1989). We find that when Bryan filed his bill of exceptions with the circuit court on June 23, 1995, the record reveals that he was not the owner of the title, nor did he have valid option to purchase, a valid contract to purchase, or a

mortgage or any other encumbrance upon the property. Therefore, Bryan did not have standing to appeal.

¶21. Alternatively and regardless of Bryan's original standing, the record is clear (and Bryan admits) that Bryan's option to purchase the site expired before the case ever made it to this Court. Even considering the latter date of April 1, 1995, submitted by Bryan as the date of expiration of his option to purchase, the contract still would have expired over two months before the submission to the Zoning Commission for a hearing and consideration of the site plan, therefore, Bryan had no valid interest.

¶22. This Court has held that it will not adjudicate moot questions. ***Bradley v. State***, 355 So. 2d 675, 676 (Miss.1978) (detainee's petition for habeas corpus was moot when detainee's sentence expired); ***Stevens Enters., Inc. v. McDonnell***, 226 Miss. 826, 827, 85 So. 2d 468 (1956)(where sheriff had already sold all of taxpayer's property under sales tax warrant, action to enjoin sheriff from proceeding further with sale was moot); ***Sheldon v. Ladner***, 205 Miss. 264, 270, 38 So. 2d 718,719 (1949) (where general election had already passed, appeal from dismissal of mandamus petition seeking to compel Secretary of State to place only petitioners' names on ballot was dismissed as moot).

¶23. Furthermore, this Court has held that "[c]ases in which an actual controversy existed at trial but the controversy has expired at the time of review, become moot. We have held that the review procedure should not be allowed for the purpose of settling abstract or academic questions, and that we have no power to issue advisory opinions." ***Allred v. Webb***, 641 So. 2d 1218, 1220 (Miss. 1994). *See also* ***Insured Sav. & Loan Ass'n v. State ex rel. Patterson,*** 242 Miss. 547, 135 So. 2d 703 (1961); ***McLendon v. Laird***, 211 Miss. 662, 52 So. 2d 497 (1951). Such is the situation here as we find that Bryan had no valid option at the time he appealed to circuit court.[2]

¶24. On March 28, 1996, the lower court, acting upon a Motion for Reconsideration, held the issue of the option was moot due to the sale of the property to a third party. We therefore affirm the lower court and agree that the primary issue regarding the option is moot.

## V.

¶25. Next, we consider the issue of whether costs and attorney fees were properly awarded subsequent to the circuit court ruling that the primary issue was moot. We note at the outset that the circuit court stated that it was imposing damages by authority of M.R.C.P. 11.

¶26. The standard of review of the circuit court's decision to grant costs and attorney fees is abuse of discretion. ***Wallace v. Jones***, 572 So. 2d 371 (Miss. 1990). *See also* ***Vicksburg Refin., Inc. v. Energy Resources, Ltd.,*** 512 So. 2d 901 (Miss. 1987); ***Ladner v. Ladner***, 436 So. 2d 1366, 1370 (Miss. 1983).

¶27. The City argues that since on motion for reconsideration the lower court ruled that in fact the issue of the option was moot due to the sale of the property in question to a third party, therefore, Bryan is not entitled to attorney fees. In order to prevail, Bryan has a two fold standard to meet. M.R.C.P. 11 authorizes monetary sanctions to pay the non-offending party's reasonable expense, including attorney fees. M.R.C.P. 11(b). In ***Leaf River Forest Prods., Inc. v. Deakle***, 661 So. 2d 188, 195 (Miss. 1995), this Court held that "Sanctions under M.R.C.P. 11 'are warranted when the pleading or motion is 1) frivolous or 2) is filed for the purpose of harassment or delay." This Court has stated that "Though a case may be weak or "light-headed," that is not sufficient to label it frivolous. ***Nichols v. Munn,*** 565 So. 2d 1132, 1137

(Miss. 1990). The fact that a case is weak is not sufficient to find that it was brought to harass. ***Brown v. Hartford Ins. Co.***, 606 So.2d 122, 127 (Miss. 1992). Here the City did not bring the action in circuit court, but rather, Bryan appealed by bill of exceptions from the City's supposed inaction on his request for a building permit to construct The Madison apartments. Nor can we allow ourselves to be influenced by the two prior bill of exceptions mentioned, as they are not before us, but rather only Bryan's third bill of exceptions and motion for attorney fees. Besides, although trial courts do have inherent authority to award damages such as costs and attorney fees, not all misconduct would warrant such an award. In ***Aeroglide Corp. v. Whitehead***, 433 So. 2d 952 (Miss. 1983), involving allegations of misconduct by defense counsel during cross-examination which caused a mistrial, and trial counsel submitted their costs and attorney fees lost due to the mistrial and defense counsel's actions, this Court stated:

> We agree with the learned trial judge that all courts possess the inherent authority to control the proceedings before them including the conduct of the participants. . . .Upon the narrow issue presented we hold that the inherent authority of the trial court did not extend to awarding of damages as in a tort action for litigation expenses irretrievably lost under the facts presented herein.

***Id.*** at 953. The case at bar is likened somewhat to ***Whitehead***, in that Bryan alleges that because of the City's actions he has suffered and incurred costs and attorney fees to which he is entitled to be awarded by the trial court. The trial court awarded such costs and attorney fees by applying Rule 11 sanctions against the City. As in ***Whitehead***, here, misconduct by the City, if any, may not necessarily warrant an award of costs and attorney's fees. Bryan complains that the City stalled his attempted construction of The Madison to the point that he no longer possessed a valid option on the property. However, the record also reflects that some of the delay can be attributed to Bryan who, for some unknown reason, did not even proceed with the construction of The Madison project when it was initially approved by the City. Subsequently, many citizens surrounding the project began to strongly voice their objections about The Madison project to the Mayor and Board of Aldermen which may have contributed to some of the subsequent events which occurred, due to the Mayor and some board members responding to their citizens' concerns about the project.

¶28. Whether the pleading or motion is frivolous is the first standard which Bryan must meet in order to prevail. This Court has held that "[A] pleading or motion is frivolous within the meaning of Rule 11 only when, objectively speaking, the pleader or movant has no hope of success." ***Leaf River***, 661 So. 2d at 195 (citing ***Stevens v. Lake***, 615 So. 2d 1177, 1184 (Miss. 1993)(quoting ***Tricon Metals & Servs., Inc. v. Topp***, 537 So. 2d 1331, 1335 (Miss. 1989)).

¶29. Regarding the second standard required, we note that the ***Leaf River*** Court stated further, "The second standard, a claim interposed for harassment or delay, generally cannot be met: 'where a plaintiff has a viable claim.'" ***Id.*** at 195 (citing ***Stringer v. Lucas***, 608 So. 2d 1351, 1359 (Miss. 1992) (quoting ***Bean v. Broussard***, 587 So. 2d 908, 913 (Miss. 1991)). The City's appeal "can hardly be considered frivolous, " as clearly there was reasonable hope of success, even though "a case is weak." ***Brown***, 606 So. 2d at 127. Here, in fact the City ultimately prevailed in the circuit court on the primary issue of the building permit which was the subject of the bill of exceptions. Five months after that ruling that the circuit court allowed costs and attorney fees applying Rule 11 sanctions on an issue that was moot. This Court, in ***Jackson County Sch. Bd. v. Osborn***, 605 So. 2d 731, 734 (Miss. 1992), held that if the underlying case is moot, the issue of awarding attorney's fees is moot. In the case at bar, the record reflects that at the time Bryan filed this third bill of exceptions on June 25, 1995, in fact, he did not have a valid option on the property as

his option expired September 30, 1994. *Osborn* thus appears to be very analogous to the case at bar, if not controlling law, regarding award of attorney's fees to a losing party where the underlying issue is moot.

¶30. We also note that in its short order, the lower court failed to cite sufficient reasons in support of clear authority for the award of costs and attorney fees pursuant to Rule 11. The lower court only mentioned its memorandum opinion and order of February 7, 1996, which upon examination, is of little or no help as to the court's reasoning, authority, or support for awarding costs and sanctions. Additionally, the comments of the lower court refer to all three of the bills of exception in imposing sanctions, when, as previously noted, each bill of exception is a separate distinct legislative act of the City. The cause of action before this Court only involves the third bill of exceptions. Yet, the circuit judge should not be faulted in this difficult, close and convoluted case. The issue of whether the City violated its ordinance or state law is indeed a debatable factual issue for the lower court to decide, and both parties presented contrastive evidence in support of their respective positions. The more difficult question however is: On what authority did the lower court impose sanctions? We note that the circuit judge stated that he was imposing sanctions based upon Rule 11. Whether the circuit judge erred in that choice of Rule 11 and actually meant some other authority as suggested by the dissent is unknown.[3] Apparently, the City and Bryan believed that the trial judge actually utilized Rule 11 since both parties' briefs solely cite to Rule 11 sanctions. We would have to speculate from this order as to sufficient support and clear authority, in view of our case law, that the trial court found for imposing sanctions upon the City. This we decline to do.

¶31. Therefore, we reverse and remand the trial judge's award of costs and attorney's fees under Rule 11 in the amount of $19,668.45 for the reasons cited above. We also must find that the lower court abused its discretion in failing to cite sufficient findings of fact, conclusions of law and clear authority in support of its award of sanctions.

## CONCLUSION

¶32. This Court thus finds that the issue of the validity of Bryan's option was indeed moot when he filed his bill of exceptions in the circuit court. Bryan had no valid option at that time. The circuit court ultimately on Motion for Reconsideration, found that the issue was moot. We, therefore, affirm the lower court's ultimate order dismissing the case as moot, but we reverse the lower court's award of costs and attorney's fees and remand this case for a new hearing and decision by the lower court regarding any award of costs and attorney's fees to Bryan.

¶33. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PITTMAN AND BANKS, P.JJ., MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J. SMITH, J., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING:**

¶34. Because I agree with the lower court's sanctioning the City of Madison for violating its own ordinance, for failing to treat its citizens fairly, for engaging in a decade-long campaign of delay to avoid issuing a permit until such time as the developer lost his interest in the property, and for forcing the developer to file three appeals to the circuit court to get the city to comply with its own ordinances, I dissent. At the very least, Bryan should have been reimbursed for monies spent in his efforts to have the City of Madison comply with

its own laws governing the issuance of building permits. The fact that Bryan no longer possessed an interest in the property (due to the City's repeated delays) did not make the City's actions any less arbitrary and capricious. For this Court to reverse those sanctions awarded Bryan merely rewards Mayor Hawkins and the City of Madison for their misdeeds and will serve only to encourage local governments to abuse their powers, results I find unconscionable.

¶35. Before I delineate my specific objections to the majority's opinion, I feel it is necessary to set forth the procedural background of this case. Not only do I disagree with the majority's disposition of this case, I part company with the majority as well when it comes to interpreting exactly what happened below. Specifically, the majority does not understand that the lower court's finding that the dispute was moot did not erase the wrongs done to Bryan in his quest for final approval of the apartment complex. Bryan was subsequently assessed sanctions damages by the court for those wrongs. The permit to develop an apartment complex was no longer an issue because of the arbitrary and capricious manner of the City's long delays in issuing a permit, which caused the permit issue to become moot. Notwithstanding the fact that the permit became moot, Bryan was damaged and entitled to sanctions.

¶36. For over a decade, Steve Bryan has been trying to obtain the approval of the governing authorities of the City of Madison to build an apartment complex within an area of the City zoned for apartments. Madison's refusal to process Bryan's various applications engendered the filing of three bills of exceptions. Three times the circuit court found that Madison was not treating Bryan fairly in pursuing his project.

¶37. The lower court undertook the Herculean task of chronicling the odyssey Bryan was forced to undertake by the City, and it did it well as evidenced by a close review of the following pertinent portion of the lower court's March 23, 1995, order:

> Within the city limits of Madison lies a certain parcel of land, (approximately 55 acres, more or less), being situated in the northwest quadrant of the intersection of Highway 463, (Main Street) and Locust Lane just east of the intersection of Highway 463 and Interstate 55. Bryan does not own the land, but rather had secured an option to purchase it when he began his fight with city hall. (Due to the delays in gaining permission to proceed with the project, the option has lapsed. Bryan still has standing to appeal.)

> The City first dealt with the land on May 8, 1987, when the Mayor and the Board of Aldermen took up the matter of re-zoning the property to allow multi-use of the parcel. The owner's request was approved and the land was rezoned to allow the construction of apartments.

> On July 3, 1990, pursuant to its statutory duty, the City adopted a comprehensive plan for the physical development of the entire municipality. The plan addressed residential, commercial, and industrial development; parks, open spaces and recreation; street and road improvements and community facilities. The plan was thorough and detailed. It provided for the construction of single family dwellings *as well as apartments*. The subject property was, according to the plan, to be eventually developed as an apartment complex.

> In early 1991, Bryan approached the City with his plans for the construction of "The Madison," an apartment development containing over 500 units. The plans were considered and on March 5, 1991, the Mayor and Board *approved* the proposal with minimal conditions relating to certain improvements on Locust Lane. On May 7, 1991, the City *approved* the architectural design of the

project. There was no objection to the height of any of the buildings by the City. For reasons known only to Bryan, he didn't begin construction at the time and, consequently, his authorization to proceed lapsed.

On December 17, 1991, the City adopted its "1992 Zoning Ordinance and Official Zoning Map", a comprehensive re-zoning procedure for the entire city, repealing all prior or inconsistent ordinances and having an effective date of January 16, 1992. The zoning of the subject property was confirmed as "R-5", the proper zoning for *apartment development*, and in accord with the City's long-range Comprehensive Plan.

After that things began to change in Madison. Subsequently Madison experienced growth and development substantially in accord with the Comprehensive Plan. Single-family homes were built in planned subdivisions. The population of Madison grew. The politics changed.

In response to petitions from residents near the subject property, the Mayor and Board attempted a rather unusual maneuver. The City voted to make application to itself to rezone the property so as to prohibit the construction of apartments. *This action was taken by the City despite the strenuous objections of the owners of the land and despite the fact that Bryan had already been given permission by the City to proceed with the project!*

As the City's Zoning Ordinance requires, the application to re-zone was submitted to the City Zoning Commission for its review. On September 13, 1993, after a full hearing, the Zoning Commission recommended that the application for re-zoning should be disapproved; that the property was zoned properly and should remain zoned "R-5" for apartment development.

On September 21, 1993 the City again considered Bryan's site plan for construction of "The Madison". (Bryan had applied for a building permit and the Board conducted its obligatory site plan review at a regular meeting). The aldermen, by a vote of 3/2 approved the site plan and the issuance of a building permit. Immediately thereafter on September 30, the Mayor filed her veto and objections to the actions of the Board. An override attempt was fruitless. Bryan appealed to this Court for relief. Giving the City the benefit of every doubt, this Court dismissed Bryan's appeal and returned the matter to the Mayor and Board for further review of Bryan's building plans.

Now returning to the **City's bizarre rezoning attempt**; a political action group calling themselves the "Madison Homeowners Association," appealed the decision of the Zoning Commission to the Mayor and Board. Thereafter the matter was set for a public hearing on November 1, 1993. Following a lengthy and thorough discussion of the issues presented by the application the Board voted 3 to 2 to deny the rezoning. The Mayor declared the application "denied" and adjourned the meeting.

Two days later, on November 3, 1993, the Mayor and four Board members met. In a blatant attempt to circumvent the City's zoning ordinances, the Mayor declared the prior November 1 vote on the rezoning application invalid and called for another vote. **The re-zoning issue did not appear on the agenda nor were the interested parties, (the landowner and developer) given any notice that the matter was subject to another vote.**

Two of the aldermen present (to their credit) properly objected to this illegal procedure and stood to leave the room. The mayor quickly counted those as "abstaining votes" and as affirmative votes on the

issue. The Mayor then announced that the re-zoning had passed by a majority vote. The landowners appealed the City's actions. This Court reversed the improper actions of the City by Order entered February 10, 1994.

On March 18, 1994, Bryan submitted a new site plan with accompanying documents to the City. On April 7, 1994, Bryan submitted amendments and modifications to the site plan. The City took the extraordinary step of hiring a special engineering firm to review the plans.

On April 25, 1994, the City's Planning and Zoning Commission voted to approve the site plan for "The Madison" subject to certain conditions suggested by both Bryan and the private engineering firm hired by the City.

On May 3, the Mayor and Board took up the matter of the site plan. The board had before it data from the City's Director of Public Works and Zoning Administrator, Southern Consultants and Bryan's revised site plan. No action was taken and the matter was continued until the next regular meeting.

On May 17, 1994, the Board predictably voted 3/2 to approve the site plan and directed city personnel to proceed with review of construction plans and issuance of a building permit for the apartment complex. Again, the Mayor vetoed the Board action. Bryan appealed. This Court remanded the matter to the City with instructions to treat Bryan "fairly". (See Memorandum Opinion and Order, March 23, 1995. * * *)

On April 18, 1995, the Mayor and Board of Aldermen of the City of Madison, met and considered waiving a 35 foot building height limitation contained in the City's Zoning Ordinance with regard to the construction of Appellant's proposed apartment complex. The Board voted 3-1 in favor of such waiver. The Mayor exercised her right of veto and the proposed waiver failed. Also, as part of the site review process, and at the same meeting, the City revisited an earlier vote requiring Appellant's proposed plans be sent to the Southern Building Institute for further review. Again, the vote was 3-2 to cancel such review. Again the Mayor vetoed the Board's actions. * * * *

(emphases in bold added; emphasis in italics in original).[(4)]

¶38. The bill of exceptions decided by the circuit court's March 23, 1995, order dealt with the City's remaining "reasons" for not approving Bryan's site plan. Those issues involved a 35 foot height restriction, Bryan's alleged failure to file a subdivision plat, water meters, etc. Toward the end of its March 23, 1995, order, the court added a warning to the City of Madison:

Finally, a word of caution to the City; Bryan is lawfully entitled to develop this property as an apartment complex provided he comply with the City's ordinances relating to construction. The land is zoned for that purpose and multi-family development is in harmony with the long-range development plans adopted by the City years ago. **The site plan review process may not be used as a device by which to improperly interfere with the property rights of a landowner.**

Bryan appears to have substantially complied with an extraordinary construction review process. Undoubtedly he has invested much in terms of time, effort and money in his attempts to acquire permission to proceed with his project. The City should deal with him fairly.

(emphasis added).

¶39. If the City had heeded the court's advice to treat Bryan fairly, the court's March 23, 1995, order would have resolved all of the City's remaining objections to Bryan's site plan. But, once again, the City managed to stonewall the project.

¶40. Specifically, the City failed to approve the issuance of a building permit after Bryan's plan had been unanimously approved, albeit subject to the resolution of six punch list items, at a June 12, 1995, meeting of Madison's Zoning and Planning Commission.

¶41. Bryan's plan was placed on the agenda for the June 13, 1995, meeting of the Board of Aldermen and Mayor. Four of the City's five aldermen and the Mayor were present. As the governing body was about to consider Bryan's plan, the Mayor suddenly announced that she had decided to remove the item from the agenda and that no action would be taken regarding Bryan's plan. She insisted that she needed to have a transcript of the Planning Committee's meeting before passing on the merits of Bryan's plan.

¶42. Immediately thereafter, three of the aldermen (a majority of the board) voted to reinstate the item on the agenda. The Mayor then produced a previously prepared typewritten "Statement of Objection and Veto" and read the same into the record.[5] There were insufficient votes to override the Mayor's veto.

¶43. Aggrieved by the City's inaction, Bryan filed a bill of exceptions and appealed to the Circuit Court of Madison County. On February 6, 1996,[6] the court ordered the City of Madison to immediately issue Bryan a building permit and approve the site plan, staging plan and development plan. "A Circuit Court will not, in the normal course, substitute its judgment for that of City leaders," the Court wrote.

> **However, when elected officials of a City government are unwilling or unable to properly attend to the duties of public office, or when municipal officials become paralyzed by political pressure exercised by a vocal majority, then it is appropriate for this Court to step aside and do what the municipal government, under the law, ought to have done.**
>
> The staging or development plan submitted by Bryan, the same one unanimously approved by Madison's Planning Commission, will be approved. **This Court finds that the City was required by Section 2408.05 of its ordinance to address Bryan's plans at its June 13, 1995 meeting;** that the City, by and through its Mayor, violated the ordinance by removing the item from the agenda and refusing to consider the same; **that the actions with regard to Bryan were unreasonable, arbitrary or capricious;** that the City is now estopped from objecting to or otherwise denying, in whole or in part, the staging or development plans; and that the City should bear any and all costs associated with this appeal.

(emphasis added).

¶44. Shortly after this order was issued, the City of Madison moved for reconsideration of the court's order on the grounds that Bryan's option had expired and that the plan was now moot. After a hearing, the lower court, having no other choice, agreed with the City that the issue of the permit was moot since Bryan no longer had any interest in the property. See Circuit Court's order of March 28, 1996. However, the circuit court further ordered **"that the rights of the parties to claims for damages, if any, are hereby preserved."** (emphasis added). On August 29, 1997, the court awarded Bryan $19,668.45 primarily for attorneys fees and costs.[7] In so doing, the court stated that the award was made pursuant to its February

7, 1996, order - the order in which the court took the city to task for having "become paralyzed by political pressure exercised by a vocal majority."

¶45. The March 28, 1996, order in which the lower court found the controversy to be moot, did not, as the majority writes, have the effect of reversing the court's earlier rulings in this case; it merely relieved the Board of Aldermen from having to issue a building permit to Bryan. The lower court clearly did not intend, in finding the controversy moot, to reward Madison for its misconduct in unfairly obstructing Bryan's project. That is, in finding the controversy moot, the lower court did not reverse its finding that Mayor Hawkins usurped her authority when she removed Bryan's plan from consideration by the Board. While the lower court clearly had reason to find that the issue of the permit was moot, the City's actions in obstructing Bryan's plan could still be addressed via damages.[8] Indeed, the lower court's order dismissing the appeal specifically stated "that the rights of the parties as to claims for damages, if any, are hereby preserved."

¶46. Bryan requested that he be awarded damages in the form of the attorneys fees he expended in pursuing his case. The court, per order of August 29, 1997 - some five months after dismissing the appeal as moot (but preserving the issue of damages including attorney fees) assessed Bryan attorney fees and costs in the amount of $19,668.45. It was doing so, the court stated, pursuant to the court's Memorandum Opinion and Order filed February 7, 1996. The February 7 order was the order in which the court held that the City and specifically, the Mayor were wrong to remove Bryan's plan from the Board's agenda. Damages in the form of reimbursement for attorneys fees expended were awarded to Bryan as recompense for the City's wrongdoing and not, as the majority contends, for a Rule 11 frivolous defense to an appeal or bill of exceptions.

¶47. The circuit court was correct in its February 7, 1996, ruling when it found that the Mayor was wrong to disallow a vote on Bryan's plan. Miss. Code Ann. § 21-3-15 (1990) provides the authority under which a mayor may veto actions by the Board of Aldermen. That section sets forth the "Duties of the mayor" and gives the mayor the right to veto any ordinance.

¶48. The action of the Board of Aldermen in voting to place Bryan's plan on the June 13, 1995, agenda was a procedural action outside the power of the Mayor to veto. If the Mayor is permitted to control whether the Board is permitted to even consider a specific matter, the Mayor can control the outcome. This would hardly seem to be a correct reading of the law. The Mayor was wrong in vetoing this item as it was a procedural matter.

¶49. The fact that Bryan no longer owned the property which was the subject of the vote did not magically transform Mayor Hawkins's wrongs into rights.[9] Nor did the lower court reverse its previous decision that the Mayor erred in removing Bryan's plan from the agenda.

¶50. A party seeking to overturn an erroneous decision of the board of aldermen (or city council) may sue not only to correct the error but to obtain damages, if any, caused by the decision. Where circumstances preclude an award of specific performance, a party may be awarded monetary damages instead. For instance, in *City of Durant v. Laws Constr. Co.*, 721 So.2d 598 (Miss. 1998), the unsuccessful bidder on a city construction project appealed via a bill of exceptions to the circuit court claiming that the lowest bidder's bid should have been rejected because of the failure of that bidder to comply with the legal requirements.[10] Rather than wait for a decision on the appeal, the city proceeded with the illegal award of the contract and, by the time of the hearing, the project was near completion. Since the circuit court could not order the project awarded to Laws, the circuit court determined that Laws was entitled to recover

damages in an amount of $168,495.00 in compensatory damages and $15,978.95 in attorneys fees and costs. On appeal, this Court affirmed. "If meaningful damages are not allowed then the legislative intent of the statutory bidding laws that public contracts are to be awarded on a purely competitive basis cannot be carried out." *City of Durant*, 721 So.2d at 606.

¶51. In this case, the circuit court may not have been able to require the City of Madison to issue a building permit but only because, due to the passage of time, Bryan no longer had an interest in the land he sought to have developed. But the Court could sanction the City for its failure to abide by the Court's order and, as in *City of Durant,* the plaintiff can be compensated in dollars.

¶52. The City did not prevail in the sense that the lower court determined the City's actions to have been right. The lower court specifically found, as it should have, that the City's actions in delaying the vote on Bryan's permit were wrong as well as arbitrary and capricious and that Bryan was entitled to damages as a result of the City's wrongfully delaying the project even after the Court's March 23, 1995, opinion resolved all of the City's remaining objections to the plan. The record demonstrates that there was ample evidence to support the lower court's award of damages for the City's wrongdoing to Bryan. First of all, there was the fact that Bryan had been trying for a period of ten years to obtain the approval of the governing authorities of the City of Madison to build an apartment complex. The record demonstrates that the City of Madison stalled Bryan at every opportunity. The mayor vetoed the Board's vote to place Bryan's building permit on the agenda even though Miss. Code Ann. § 21-3-15 (1990) does not give veto power to the mayor over "procedural actions governing the conduct of the council's meetings . . . ." Finally, there was the fact that the area in which Bryan proposed to build his apartment complex was zoned for multi-family housing. A city does not have the discretion to deny a building permit for a project where it complies with the applicable codes and ordinances.[11] All of these factors support the lower court's award of damages to Bryan.

¶53. The majority has attempted to limit what the lower court may do with this case on remand by implying that Rule 11 sanctions in this case were not warranted. When the lower court referred to Rule 11 in its order awarding attorneys fees to Bryan, the lower court no doubt misspoke.[12] The attorneys fees awarded against the City of Madison were not granted as a result of a frivolous appeal; they were awarded for the City's wrongful action in delaying approval of Bryan's site plan even after the court's March and April, 1995, orders resolving what should have been all of the remaining obstacles to approval. The lower court's award of damages to Bryan specifically referred to the court's earlier, February 7, 1996, order in which the court found that the City of Madison had erred in denying Bryan his building permit. Indeed, the court's award of $19,668.45 was for all attorneys fees expended by Bryan after the Court's March 23, 1995 order since, at that point, all of the issues had been resolved. (See attachment.)[13]

¶54. Clearly, sanctions were warranted in this case albeit not Rule 11 damages. Indeed, it would seem that Bryan may have been entitled to more than just attorney's fees in the way of damages as a result of the illegal actions of the City of Madison.[14] Given the nature of the City's misdeeds as well as the amount of money that Bryan could have claimed as damages as a result of the City's illegal actions, the City of Madison should rejoice that the damages awarded were as insignificant as they were.

¶55. The lower court's confusion in characterizing the sanctions in this case is understandable given the dual role that the lower court plays when it hears a bill of exceptions. In determining the correctness of the city's actions, the circuit court is acting as an appellate court pursuant to Miss. Code Ann. § 11-51-75. However, where the court concludes that damages are warranted and in determining the amount of damages (as in

*City of Durant, supra)*, it is acting more as a fact finder to whom we owe some deference.

¶56. There are ways in which a city may legitimately control the use of property within its boundaries. The City of Madison, however, chose not to utilize those methods and instead embarked on a decade-long effort to stonewall Bryan's apartment complex. To the extent that the majority's opinion endorses Madison's conduct, it does a grave disservice to citizens who seek to be treated fairly by their local elected officials. For the majority to hold that Bryan was not entitled to the sanctions assessed by the lower court leaves him having been wronged without a remedy and rewards a city for doing an injustice to its citizenry.

¶57. Even if this Court did award Bryan attorneys fees and costs, $19,668.45 would only be a drop in the bucket compared to the $62,786.90 that he expended during the staging plan and development appeal period, plus all the costs incurred since March 18, 1994.

¶58. Instead, this Court sends back Bryan's case to a new judge.[(15)] A judge who will be expected to better explain exactly what Judge Toney meant in his order. It will be interesting to see if a new judge, who has had no previous involvement in this case, can read Judge Toney's mind any better than the majority.

¶59. For all of these reasons, I dissent.

### DIAZ, J., JOINS THIS OPINION.

1. Other states have specifically held that an option holder has a sufficient property interest to initiate a request for a zoning change. *See Hatch v. Fiscal Court of Fayette County*, 242 S.W.2d 1018, 1022 (Ky. 1951); *Humble Oil & Ref. Co. v. Board of Aldermen of Town of Chapel Hill*, 202 S.E.2d 129 (N.C. 1974).

2. Bryan also filed suit against the City in the United States District Court for the Southern District of Mississippi and that suit has already been decided. *Bryan v. City of Madison*, No. 3:97-cv-73WS (S.D. Miss. Mar. 31, 1999), *appeal pending*, 5th Cir. No. 99-60305. The district court, citing the circuit court's order finding the issue was moot, also ruled, inter alia that the issue of the option to build The Madison was moot, because the property was sold to a third party who had a different purpose in mind for the property at issue here.

3. The dissent claims that the circuit judge's order contained a typographical error in imposing "Rule 11" sanctions, and that damages were partially awarded to Bryan as recompense for the City's wrongdoing per *City of Durant v. Laws Constr. Co.*, 721 So. 2d 598 (Miss. 1998). Such claims only further support the majority view that this Court cannot determine with any degree of certainty under what support and authority the trial court was imposing sanctions against the City.

4. The court issued an order on April 26, 1995, resolving the issue on the height of the buildings.

5. Mayor Hawkins read from the memo as follows: "Pursuant to the authority of the Mississippi Code Annotated 21-3-15, I hereby exercise my right to file a statement of objection and veto that certain action taken by the Board of Aldermen of the City of Madison, Mississippi, on June 13, 1995, wherein the board by a vote of three to one voted to reinstate consideration of the staging plan for "the Madison" apartments after its removal from the agenda, and in support of this veto, I would show the following. Number one, the staging plan was the subject of a five-hour meeting of the Madison Planning Commission last night where numerous substantive and important matters were discussed. Number two, since a court reporter was

present and a transcript of the hearing can be obtained, I feel it would be in the best interests of the city for the board and me to obtain a copy of the transcript prior to any action on the staging plan. Consideration of this will be at the first meeting in July. It will not cause any undue delay to the developer when compared with the benefit of having a transcript available."

6. The order was filed February 7, 1996.

7. Bryan's itemization of expenses is attached as an exhibit to this opinion.

8. This is not as incongruous as it may seem at first blush. For example, in ***Anderson v. United States Dep't of Health & Human Servs.***, 3 F.3d 1383 (10th Cir. 1993), the plaintiff sued under the Freedom of Information Act in order to obtain government documents. The case was dismissed as moot when the government produced the requested documents. This did not moot plaintiff's claims for attorneys fees nor did it make the government right in withholding the requested information.

9. Indeed, once the plan met with the approval of the Planning Committee, the City of Madison did not have the discretion to withhold a building permit if the proposed building met the applicable building codes and ordinances. ***Thompson v. Mayfield***, 204 So.2d 878 (Miss. 1967) (where all building codes and zoning ordinances are complied with, the city did not have the discretion to deny a building permit); ***Berry v. Embrey***, 238 Miss. 819, 120 So.2d 165 (1960) (A permit to erect a structure which conforms to building regulations cannot be denied because of proposed use where not zoned against such use); 83 Am.Jur.2d *Zoning and Planning* § 650, at 550 (1992)("Generally speaking, a municipality is without authority to deny a permit for a currently legal use."); 101A C.J.S. *Zoning and Planning* § 195, at 576-77 (1979)("Broadly stated, while a property owner does not have an absolute right to obtain a permit to use land in a manner contemplated by existing zoning ordinance, a permit may not be denied unless there is a showing that the public health, safety, or welfare is in danger.").

In ***City of Jackson v. Sunray DX Oil Co.***, 197 So.2d 882 (Miss. 1967), the landowner sought a permit to construct a service station. The city refused to grant the permit even though the land had been zoned commercial and there were other service stations in the area. This Court, stating that "the commercial owner is as entitled to the full use of his property as is his residential counterpart," held that the city had no discretion to deny the permit absent proof that the station would constitute a nuisance in fact.

10. The bid was illegal in that it did not include the certificate of responsibility number on the exterior of the envelope. *[City of Durant]*, 721 So.2d at 600.

11. *See* ***Thompson v. Mayfield***, 204 So.2d 878 (Miss. 1967) (where all building codes and zoning ordinances are complied with, the city did not have the discretion to deny a building permit); ***City of Jackson v. Sunray DX Oil Co.***, 197 So.2d 882 (Miss. 1967) (the city had no discretion to deny permit for gas station in area zoned commercial absent proof that the station would constitute a nuisance in fact); ***Berry v. Embrey***, 238 Miss. 819, 120 So.2d 165 (1960) (A permit to erect a structure which conforms to building regulations cannot be denied because of proposed use where not zoned against such use);83 Am.Jur.2d *Zoning and Planning* § 650, at 550 (1992)("Generally speaking, a municipality is without authority to deny a permit for a currently legal use."); 101A C.J.S. *Zoning and Planning* § 195, at 576-77 (1979)("Broadly stated, while a property owner does not have an absolute right to obtain a permit to use land in a manner contemplated by existing zoning ordinance, a permit may not be denied unless there is a showing that the public health, safety, or welfare is in danger.").

12. The fact that Judge Toney misspoke when referring to Rule 11 is supported by the fact that the court's award of attorneys fees was not limited to just those fees spent prosecuting the bill of exceptions. The court awarded Bryan attorneys fees for all legal fees incurred since April 26, 1995. April 26, 1995, is the date on which the lower court issued an order that was to have resolved all the hurdles blocking approval of Bryan's development. The attorneys fees awarded, then, represent damages for the City's continued opposition to the plan after it became clear that the City could no longer, at least legally, do so. If the damages were truly Rule 11 damages, they would have been limited to those amounts expended on the last bill of exceptions.

13. Attached is a letter from Steve Smith of Taylor, Covington & Smith detailing the costs expended by his firm in representation of Steve Bryan's interests. This letter details the roadblocks Bryan encountered throughout this case and contains a thorough itemization of all fees and costs expended. Bryan also presented documentation of all his payments to his law firm, including copies of each check.

14. This is not an action under 42 U.S.C. § 1983 or § 1985.

15. Judge Toney did not run for reelection.