# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-01477-SCT

*JOHN MORGAN*

*v.*

*XLK INTERNATIONAL, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/15/2016 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| TRIAL COURT ATTORNEYS: | JOHN DAVID SANFORD |
| | MARC E. BRAND |
| | GENE W. GARDNER |
| | ROBERT MOAK |
| COURT FROM WHICH APPEALED: | CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY |
| ATTORNEYS FOR APPELLANT: | GENE W. GARDNER |
| | ROBERT MOAK |
| ATTORNEYS FOR APPELLEE: | JOHN DAVID SANFORD |
| | BRETT R. KOEHN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 10/25/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., BEAM AND CHAMBERLIN, JJ.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1. John Morgan submitted a public records request to the Mississippi State Hospital ("MSH") after it had awarded a contract for insurance plan administration to XLK International, LLC (XLK). Morgan, whose bid for the insurance plan administration contract had been unsuccessful, demanded access to all documents XLK had submitted in response to the state hospital's request for proposal (RFP). XLK sought and obtained a protective

order in the Chancery Court of the First Judicial District of Hinds County. The chancery court allowed Morgan to intervene and held a hearing on his Motion to Set Aside Protective Order. The chancery court ruled that the documents XLK had submitted in response to MSH's RFP were not subject to disclosure under the Mississippi Public Records Act, with the exception of the contract between MSH and XLK. Because the chancery court correctly applied the Mississippi Public Records Act, this Court affirms its judgment.

## FACTS AND PROCEDURAL HISTORY

¶2.    The Mississippi Department of Mental Health at the Mississippi State Hospital published an RFP under Mississippi Code Section 25-15-301 (Rev. 2010), in which it sought proposals for administration of group insurance plans for state employees. On July 24, 2014, XLK responded to the RFP by submitting its proposal to MSH. Ultimately, MSH awarded the contract for insurance plan administration to XLK.

¶3.    On October 23, 2015, MSH notified XLK that a public records request had been submitted by John Morgan. Morgan sought a copy of the successful proposal. MSH informed XLK that, without a protective order, it would turn over XLK's proposal to Morgan. In response, on October 28, 2015, XLK filed its Petition for a Protective Order in the Chancery Court of the First Judicial District of Hinds County. XLK argued that, "[w]ithin the Proposal and all other submitted documents including, but not limited to, quotes, complimentary product packages, and presentation handouts, XLK included trade secrets and confidential commercial and financial information of a proprietary nature." According to XLK, "[i]f any of this information is divulged to its competitors, XLK will lose its competitive edge in an

2

extremely competitive business." Attached to the Petition for a Protective Order was an affidavit from James M. Knox, XLK's president, attesting that disclosure of the proprietary information belonging to XLK contained in the documents submitted in response to the RFP "would harm XLK International, LLC's ability to compete in the insurance administration business."

¶4.    On October 28, 2015, the chancery court entered a protective order, holding that "[t]he Proposal and all other documents submitted to the Mississippi State Hospital and Department of Mental Heath, State of Mississippi, contain trade secrets and financial information of a proprietary nature, which are exempt from the Mississippi Public Records Act" under Mississippi Code Section 25-61-9.

¶5.    On January 13, 2016, Morgan filed a Motion to Intervene under Mississippi Rule of Civil Procedure 24, arguing that he had a right to examine what he claimed to be public records and that the protective order deprived him of that right. Morgan attached to his Motion to Intervene a Motion to Set Aside Protective Order, in which he argued that "[r]outine insurance quotes and a recitation of services to be provided by an insurance agency are not confidential, nor proprietary, and[,] therefore, should be accessible [to] the public at large."

¶6.    Following a hearing on February 24, 2016, the chancery court, on February 29, 2016, entered an order granting Morgan's Motion to Intervene. The chancery court continued "Morgan's Motion to Set Aside Protective Order is ordered filed and the parties are directed to set this matter for full hearing on Morgan's Motion."

¶7.    A hearing was held before the chancery court on August 9, 2016, on Morgan's Motion to Set Aside Protective Order. The court entered a final order on September 15, 2016, in which it held, on the basis of Mississippi Code Section 25-61-9(1), that documents submitted by XLK in response to the RFP "contain trade secrets or confidential commercial or financial information . . . ." The chancery court recognized, however, the "exception set forth in Miss. Code Ann. § 25-61-9(7)," and, accordingly, amended the October 28, 2015, protective order "to allow disclosure of the 'Agreement Between Mississippi State Hospital of Whitfield Mississippi (MSH) and XLK International, LLC[,]' a seven (7) page document signed by XLK on September 25, 2016." The court held that "[t]his 'Agreement' constitutes a 'contract which contain[s] the commodities purchased or the personal or professional services provided, the price to be paid, and the term of the contract.'" Accordingly, while "MSH and/or the Mississippi Department of Mental Health shall be permitted to disclose said 'Agreement' in its entirety of Morgan in response to his Public Records Request,'" the "other documents submitted by XLK shall remain protected and exempt from disclosure under the October 28, 2015[,] Protective Order." Morgan filed a notice of appeal on October 14, 2016.

*XLK's Motion to Docket and Dismiss Appeal*

¶8.    XLK filed, on May 18, 2017, a Motion to Docket and Dismiss Appeal and Motion to Stay Briefing Schedule Pending Ruling on Instant Motion. XLK argued that, because Morgan's Motion to Set Aside Protective Order had been filed only as an attachment to his Motion to Intervene, XLK was deprived of the opportunity to respond to the Motion to Set Aside Protective Order. XLK acknowledges that it "is not representing that it did not have

4

notice of the underlying Motion to Set Aside Protective Order." XLK also represented that "the only issue on appeal, whether or not Appellant is entitled to the pricing component of a procurement contract pursuant to Miss. Code Ann. 25-61-9(7), is moot since there was no price paid by the State of Mississippi to Appellee."

¶9.     Morgan responded that the trial court had ordered the Motion to Set Aside Protective Order filed, so no reason existed for his refiling "the Motion which had already been ordered filed by the Chancellor." Moreover, Morgan averred that XLK, following the February 29, 2016, order permitting Morgan to intervene and ordering filed his Motion to Set Aside Protective Order, had waived any procedural objection by not raising the issue before the trial court. With regard to XLK's mootness argument, Morgan responds that XLK "conducts its own evidentiary hearing and offers its own evidentiary ruling" in its Motion to Docket and Dismiss Appeal.

¶10.    On January 11, 2018, this Court passed for consideration with the merits of the case XLK's Motion to Docket and Dismiss Appeal and dismissed as moot XLK's Motion to Stay Briefing Schedule Pending Ruling on Instant Motion.

*Issues on Appeal*

¶11.    Two issues are before the Court on appeal:

1.      Whether the appeal should be dismissed because Morgan failed, in accordance with Mississippi Rule of Civil Procedure 24(c), to refile his Motion to Set Aside Protective Order after the chancery court had granted his Motion to Intervene.

2.      Whether the chancery court correctly held that documents submitted by XLK in response to the RFP to the Mississippi State Hospital were

exempt from disclosure under Mississippi Code Sections 25-61-9(1) and 25-61-9(7).

The part of the Motion to Docket and Dismiss Appeal relating to the Mississippi Rule of Civil Procedure 24(c) issue will be discussed first. The issue of mootness raised by XLK in the Motion to Docket and Dismiss Appeal will be discussed, along with the merits, second.

## STANDARD OF REVIEW

¶12. "In regard to matters relating to discovery, the chancellor has considerable discretion. This Court will not disturb discovery orders unless there has been an abuse of discretion." *Electr. Data Sys. Corp. v. Miss. Div. of Medicaid*, 853 So. 2d 1192, 1209 (Miss. 2003).

## DISCUSSION

**1. Whether the appeal should be dismissed because Morgan failed, in accordance with Mississippi Rule of Civil Procedure 24(c), to refile his Motion to Set Aside Protective Order after the chancery court had granted his Motion to Intervene.**

¶13. XLK argues, both in its brief and in its Motion to Docket and Dismiss Appeal, that the appeal should be dismissed because Morgan filed the Motion to Set Aside Protective Order as an attachment to his Motion to Intervene. XLK acknowledges that the chancery court's order granting Morgan's Motion to Intervene stated that "Morgan's Motion to Set Aside Protective Order is Ordered filed . . . ." XLK argues, however, that "the Order did not specify who was to file the Order, and regardless, the Motion to Set Aside Protective Order was never filed by the clerk or the Appellant herein." Morgan responds that, while hearings had been held on the Motion to Set Aside Protective Order, XLK failed to raise this

6

objection; therefore, "any objection now raised by XLK is waived due to its failure to timely raise the issue at the trial level."

¶14.　XLK references Mississippi Rule of Civil Procedure 24(c), which states, "A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." Miss. R. Civ. P. 24(c). XLK relies on language from this Court: "Once the motion to intervene is granted, the complaint in intervention must be filed, even if that act is accomplished merely by detaching the complaint in intervention from the motion to which it had been exhibited and handing it back to the clerk for filing." **Breland v. Smith-Johnson, Inc.**, 501 So. 2d 389, 393 (Miss. 1987).

¶15.　But the **Breland** Court had before it the following question: "Once a trial court has appropriately entered an order granting a motion for leave to intervene, by what procedure must the intervenor serve his pleading upon the other parties to the action?" **Id.** at 390. The question was, in the Court's words, "a narrow but not insignificant procedural question concerning intervention practice under Rule 5, not Rule 24, Mississippi Rules of Civil Procedure." **Id.** The Court held that, following the grant of a motion to intervene, the complaint in intervention must be detached from the motion to intervene and separately filed and that once "this new filing be done it is subject to the service requirement of Rule 5(a) and the service methodology of Rule 5(b)." **Id.** at 393.

¶16.　Here, XLK is not complaining of a defect in service of process of the Motion to Set Aside Protective Order. In fact, XLK concedes that it "is not representing that it did not have

7

notice of the underlying Motion to Set Aside Protective Order." ***Breland***, which answered

a narrow procedural question about proper service of process under Mississippi Rule of Civil

Procedure 5, is inapposite. The ***Breland*** Court did not hold, as XLK would have us do, that

"the failure to file any pleadings after a Motion to Intervene is granted is grounds for this

appeal to be dismissed." Accordingly, this Court denies that portion of XLK's Motion to

Docket and Dismiss Appeal. Likewise, the identical issue XLK raises on appeal is without

merit.

> **2.      Whether the chancery court correctly held that documents submitted by XLK in response to the RFP to the Mississippi State Hospital were exempt from disclosure under Mississippi Code Sections 25-61-9(1) and 25-61-9(7).**

*Mississippi Code Section 25-61-9(1)*

¶17.    Mississippi Code Section 25-61-9(1), at the time, provided,

> Records furnished to public bodies by third parties which contain trade secrets or confidential commercial or financial information shall not be subject to inspection, examination, copying or reproduction under this chapter until notice to third parties has been given, but the records shall be released within a reasonable period of time unless the said third parties shall have obtained a court order protecting such records as confidential.

Miss. Code Ann. § 25-61-9(1) (Rev. 2010).[1] In ***Mississippi State University v. People for the***

***Ethical Treatment of Animals, Inc.*** (PETA), PETA had sought all records relating to

"research projects, tests, and/or experiments that initially received funding and/or

sponsorship and any and all installments thereof, in whole or in part, from The Iams

Company . . . or an affiliate and for which *in vivo* animal research was conducted at MSU

---

[1] Mississippi Code Section 25-61-9(1) was revised effective July 1, 2016.

from 1999 to date." ***Miss. State Univ. v. People for the Ethical Treatment of Animals, Inc.***, 992 So. 2d 595, 595-96 (Miss. 2008). This Court held that data and information requested by PETA had been exempted from the provisions of the Mississippi Public Records Act because PETA failed to rebut an affidavit submitted by MSU stating "that the data and information requested in the subject records constituted trade secrets and/or confidential commercial and financial information developed by MSU under contract with Iams." ***Id.*** at 610.

¶18. Here, in support of the Petition for Protective Order, XLK submitted an affidavit from its president, Knox, attesting that "disclosure of the documents requested from the Mississippi State Hospital would reveal trade secrets, confidential commercial and financial information of a proprietary nature wh[ic]h belong to XLK . . . and were developed by XLK . . . ." Knox continued that "divulgence of this information to the public and XLK['s] . . . competitors would harm XLK['s] . . . ability to compete in the insurance administration business."

¶19. Morgan argues,

> Taxpayers have a right to know if the government is spending taxpayer funds wisely and prudently. Are government agencies spending far more for services that private citizens? Is government agency awarding a contract to a friend at an elevated price in order to assist that friend? Are state funds being used to purchase insurance which could be purchased at far less expensive rates? Is an entity agreeing to provide services to a state agency in a manner which violates the rules and regulations of a state department? These are questions which should be easily answered by the disclosure of agency contracts together with the pricing component surrounding the contract.

But apart from speculation about the contents of XLK's RFP response, Morgan offered nothing at the trial court level to contradict Knox's affidavit, in which Knox attested that the contents of the RFP response contained "trade secrets or confidential commercial or financial information."

¶20.   More importantly, this Court has reviewed the documents submitted by XLK in response to MSH's RFP. Nothing contained in XLK's RFP response provides Morgan a resolution to the problem he identifies: "the taxpayers of Mississippi do not know if MSH is using tax dollars wisely or foolishly."  Apart from the Agreement, which XLK concedes is subject to disclosure under Section 25-61-9(1), XLK's RFP response contains trade secrets and confidential commercial and financial information, including insurance quotes, charts showing employee cost savings, and other marketing materials designed solely to entice MSH to award XLK the contract. The chancellor correctly ruled that only the Agreement between MSH and XLK dated September 25, 2015, was subject to disclosure under Mississippi Code Section 25-61-9(1).

*Mississippi Code Section 25-61-9(7) and Mootness*

Mississippi Code Section 25-61-9(7) states, in pertinent part,

> For all procurement contracts awarded by state agencies, the provisions of the contract which contain the commodities purchased or the personal or professional services provided, the unit prices contained within the procurement contracts, the overall price to be paid, and the term of the contract shall not be deemed to be a trade secret or confidential commercial or financial information under this section, and shall be available for examination, copying or reproduction as provided for in this chapter.

10

Miss. Code Ann. § 25-61-9(7) (Supp. 2017).[2] Morgan argues that, "[p]ursuant to Miss. Code Ann. [§] 25-61-9(7), [he] is entitled to access to XLK's contract with MSH, including the pricing component: the costs of the various insurance coverages and the fees being charged by XLK, if any."

¶21. XLK argues in its Motion to Docket and Dismiss Appeal that the question of Morgan's entitlement to the pricing component of a procurement contract under Mississippi Code Section 25-61-9(7) is moot because "there was no price paid by the State of Mississippi to" XLK. This Court has held that

> "A case is moot if 'a judgment on the merits . . . would be of no practical benefit to the plaintiff or detriment to the defendant.'" *In re City of Biloxi*, 113 So. 3d 565, 572 (Miss. 2013) (quoting *Gartrell v. Gartrell*, 936 So. 2d 915, 916 (Miss. 2006)). "We repeatedly have held that '[c]ases in which an actual controversy existed at trial but the controversy has expired at the time of review, become moot.'" *In re City of Biloxi*, 113 So. 3d at 572. As such, "standing must exist when litigation is commenced and must continue through all subsequent stages of litigation, or the case will become moot." *Id.* "Cases that have become moot will be dismissed, because the Court does not adjudicate moot questions." *Id.* (citing *City of Madison v. Bryan*, 763 So. 2d 162, 166 (Miss. 2000)). "'We have held that the review procedure should not be allowed for the purpose of settling abstract or academic questions, and that we have no power to issue advisory opinions.'" *Fails v. Jefferson Davis Cty. Pub. Sch. Bd.*, 95 So. 3d 1223, 1225 (Miss. 2012) (quoting *Allred v. Webb*, 641 So. 2d 1218, 1220 (Miss. 1994)).

*In re Validation of Tax Anticipation Note*, 187 So. 3d 1025, 1032 (Miss. 2016).

¶22. Here, the documents Morgan seeks to inspect are sealed. This Court has undertaken an *in camera* review, as did the chancery court, to ascertain whether, as Morgan claims, the documents he seeks are subject to disclosure under Mississippi Code Section 25-61-9(7). As

---

[2] Mississippi Code Section 25-61-9(7), which was added during the 2015 legislative session, became effective on July 1, 2015. *See* Miss. Code Ann. § 25-61-9(7) (Supp. 2015).

such, an actual controversy was presented to this Court, and XLK's motion, with respect to its mootness argument, is denied as well.

¶23. XLK argues in its brief that Mississippi Code Section 25-61-9(7) applies only to allow disclosure of the "Agreement Between Mississippi State Hospital of Whitfield Mississippi (MSH) and XLK International, LLC," and that "[n]one of the other documents are remotely contractual in nature and are designed solely to entice the State Hospital into entering into business with XLK by revealing to the State Hospital how XLK's business model can save state employees money and make their insurance enrollment experience less complicated."

¶24. In his reply brief, Morgan asserts several concerns about what he believes is— contrary to XLK's assertions—contained in the RFP. But what Morgan conjectures he might discover in a review of XLK's RFP is of no moment, since the only question with regard to Mississippi Code Section 25-61-9(7) is whether the contract between XLK and MSH is a "procurement contract[] awarded by" a state agency and whether the contract contains "the commodities purchased or the personal or professional services provided, the unit prices contained within the procurement contracts, the overall price to be paid, and the term of the contract." Miss. Code. Ann. § 25-61-9(7). Only then would the documents be subject to disclosure under Mississippi Code Section 25-61-9(7).

¶25. Assuming, *arguendo*, the documents submitted by XLK in response to MSH's RFP constitute a procurement contract for purposes of Mississippi Code Section 25-61-9(7),[3] the

---

[3] XLK suggests that the contract is not a procurement contract: "In this instance, the State Hospital has contracted with XLK in order for XLK to provide a service to State Employees. The State is not directly procuring a good or service with government funds, but it is selecting the administrator for its employee's insurance benefits."

chancery court did not abuse its discretion in holding that, excepting the Agreement between MSH and XLK dated September 25, 2015, the remaining documents were not subject to disclosure to Morgan under Mississippi Code Section 25-61-9(7). The documents in the RFP response contain insurance quotes, charts showing employee cost savings, and other marketing materials designed for the purpose of persuading MSH to award XLK the contract. Accordingly, the judgment of the chancery court is affirmed, and, excepting the Agreement between MSH and XLK dated September 25, 2015, the protective order entered on October 28, 2015, remains in effect.

## CONCLUSION

¶26. Morgan is not entitled to the entirety of XLK's response to MSH's RFP under Mississippi Code Sections 25-61-9(1) and (7). Because Morgan is entitled only to the Agreement between MSH and XLK dated September 25, 2015, the chancellor did not abuse his discretion in ordering the Agreement's disclosure alone. Accordingly, this Court affirms the judgment of the Chancery Court of the First Judicial District of Hinds County. The Motion to Docket and Dismiss Appeal filed by XLK is denied.

¶27. **AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., KING, COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ, CONCUR.**