# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-01381-SCT

*DESOTO TIMES TODAY*

*v.*

*MEMPHIS PUBLISHING COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/13/2007 |
| TRIAL JUDGE: | HON. ANDREW C. BAKER |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MARY LYNN DAMARE' |
| ATTORNEYS FOR APPELLEE: | LUCIAN T. PERA |
| | JOHN S. HOOKS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 09/18/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    *The DeSoto Times Today* appeals the DeSoto County Circuit Court's ruling that *The DeSoto Appeal* is a newspaper qualified to publish legal notices within the meaning of Section 13-3-31 of the Mississippi Code Annotated (Rev. 2002).  Finding no error, we affirm.

## FACTS AND PROCEEDINGS

¶2.    The DeSoto County Board of Supervisors sought a declaratory judgment as to whether *The DeSoto Appeal* is a newspaper qualified to publish legal notices for DeSoto County

within the meaning of Section 13-3-31 of the Mississippi Code Annotated (Rev. 2002).[1] The complaint named as co-defendants Memphis Publishing Company, publisher of *The DeSoto Appeal* (hereinafter, "*The Appeal*")[2]; PH Publishing LLC, publisher of *The DeSoto Times Today* (hereinafter, "*The Times*"); and David Grisham, publisher of *The DeSoto County Tribune*.[3]

¶3. At trial, *The Appeal* provided evidence that its approximate daily circulation in DeSoto County was 15,000 newspapers, with up to 22,000 on Sundays, and that it maintained a list of all subscribers categorized by delivery type. The monthly subscription price for *The Appeal* is $17.50 for the daily paper, and just over $12.00 for weekends only. *The Appeal* maintains a business office in Southaven, Mississippi, which is located in DeSoto County. Approximately twenty employees work at the Southaven office, covering a full range of publication duties. *The Appeal* has been in operation for almost four years.

¶4. The trial court found that *The Appeal* is qualified under Section 13-3-31 to publish legal notices within DeSoto County. *The Times* appeals this judgment,[4] raising the following issues:

---

[1] Section 13-3-31, discussed *infra*, lists several criteria that must be established before a newspaper can publish legal notices. Miss. Code Ann. § 13-3-31 (Rev. 2002).

[2] Memphis Publishing Company is headquartered in Memphis, Tennessee, and publishes *The Commercial Appeal*, as well.

[3] David Grisham did not participate in the discovery process or enter an appearance at trial.

[4] Neither DeSoto County nor David Grisham, publisher of *The DeSoto County Tribune*, appealed the ruling.

(1) whether the trial court erred in finding that *The Appeal* is qualified under Section 13-3-31 to publish legal notices and (2) whether the trial court erred in failing to consider whether *The Appeal* was a separate newspaper from *The Commercial Appeal*. Because these two issues are interrelated, we address them together under Issue II.

¶5. Although no cross-appeal was filed, *The Appeal* challenges *The Times'* standing to file this appeal. Because standing is jurisdictional and may be considered by this Court sua sponte, we will address this issue as well. ***City of Madison v. Bryan***, 763 So. 2d 162, 166 (Miss. 2000) (citing ***Williams v. Stevens***, 390 So. 2d 1012, 1014 (Miss. 1980)).

## DISCUSSION

### I.    Whether *The Times* had standing to appeal.

¶6. The standing of a party to an appeal is a question of law reviewed under a de novo standard. ***Dep't of Human Servs. v. Gaddis***, 730 So. 2d 1116, 1117 (Miss. 1998); ***T.M. v. Noblitt***, 650 So. 2d 1340, 1342 (Miss. 1995); ***Miss. State Dep't of Human Servs. v. Barnett***, 633 So. 2d 430, 434 (Miss. 1993); ***UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc.***, 525 So. 2d 746, 754 (Miss. 1987). "[S]tanding is a 'jurisdictional issue which may be raised by any party or the Court at any time.'" ***City of Madison***, 763 So. 2d at 166 (quoting ***Williams***, 390 So. 2d at 1014).

¶7. *The Appeal* asserts that *The Times*, as an unnecessary codefendant, does not have standing to appeal a declaratory judgment which affects only the legal rights of *The Appeal*. Further, *The Appeal* claims that *The Times* lacks standing because no actionable controversy

exists between *The Appeal* and *The Times*.[5]  *The Times* counters that it was not only a

necessary party, but an adverse party as well.  *The Times* asserts that the circuit court's ruling

was adverse to its monetary interest.

¶8.      Mississippi's standing requirements are broad.  *See **Dunn v. Miss. State Dep't of***

***Health***, 708 So. 2d 67, 70 (Miss. 1998).  Unlike the federal rules, which are more strict,

Mississippi parties have standing to "sue or intervene when they assert a colorable interest

in the subject matter of the litigation or experience an adverse effect from the conduct of the

defendant, or as otherwise authorized by law." ***Fordice v. Bryan***, 651 So. 2d 998, 1003

(Miss. 1995) (quoting ***State ex rel. Moore v. Molpus***, 578 So. 2d 624, 632 (Miss. 1991)); *see*

*also **Mississippi Gaming Comm'n v. Board of Educ.***, 691 So. 2d 452, 460-61 (Miss. 1997);

***Harrison County v. City of Gulfport***, 557 So. 2d 780, 782 (Miss. 1990); ***Dye v. State ex rel.***

***Hale***, 507 So. 2d 332, 338 (Miss. 1987).

---

[5] Tom Pittman, who serves as managing partner and representative of PH Publishing,
LLC, which publishes *The Times*, gave the following statements in his deposition:

A:      [A]s I understand it, [*The Times*] is a co-defendant with [*The
        Appeal*] in this matter.  And, you know, we don't have – we are
        not a plaintiff against [*The Appeal*] or a defendant against [*The
        Appeal*] against us [sic], as I understand it.  I don't understand
        that we have an adversarial relationship.  We are just both
        defendants in the case.

Q:      So PH Publishing takes no position one way or another as to
        whether or not [*The Appeal*] qualifies under the statute?  Is that
        your statement here today on behalf of PH Publishing?

A:      I guess the – I mean, we have no legal standing to that effect . .
        . .

4

¶9. For support, *The Appeal* cites a case from the Mississippi Court of Appeals. In ***S & F Publishing Co., Inc. v. Gulf Publishing Co.***, 760 So. 2d 38 (Miss. Ct. App. 2000), one newspaper filed a declaratory judgment action against another newspaper, seeking a determination of rights under Sections 13-3-31 and 13-3-32 of the Mississippi Code. *Id*. at 39. The Court of Appeals found that neither newspaper had standing against the other in a declaratory judgment action concerning status under either statute. *Id*. at 41.

> This case represents a running feud between business competitors that, on the issues presented in this case, could never ripen into a situation where either could obtain a coercive remedy against the other. To the extent that either litigant felt itself wrongfully deprived of the right to compete for the legal notice publishing business of a governmental body within the borders of Harrison County, the coercive legal remedy would be against the public body contracting for the publication and not against the company that obtained the contract.

*Id.*

¶10. The case before us is factually similar but different procedurally. Here, *The Times* did not file a complaint against *The Appeal*. Rather, DeSoto County filed suit and named *The Times* and *The Appeal* as co-defendants. Unlike ***S & F Publishing Co., Inc.***, the governing body contracting for publication was a party to the action. *See id*. at 41. Furthermore, "[a]n appeal may be taken to the Supreme Court from any final judgment of a circuit or chancery court in a civil case, not being a judgment by default, by *any of the parties* or legal representatives of such parties . . . ." Miss. Code Ann. § 11-51-3 (Rev. 2004) (emphasis added).

¶11. We find that *The Times* has standing to appeal.

**II.     Whether the trial court erred in finding that *The Appeal* is qualified to publish legal notices.**

**A. Whether *The Appeal* is a separate newspaper from *The Commercial Appeal.***

¶12.    "When reviewing questions of law, this Court employs a de novo standard of review and will only reverse for an erroneous interpretation or application of the law." ***Gannett River States Publ'g Corp. v. City of Jackson***, 866 So. 2d 462, 465 (Miss. 2004) (citing ***Morgan v. West***, 812 So. 2d 987, 990 (Miss. 2002)).

¶13.    *The Times* argues that the trial court erred by applying Section 13-3-31 before first determining whether *The Appeal* is simply a section or insert of *The Commercial Appeal*. In its ruling, the trial court found that "whether [*The Appeal*] is a separate newspaper from the *Commercial Appeal* [sic] is irrelevant to the determination of whether [*The Appeal*] qualifies under [Section 13-3-31] . . ." so long as the requirements of the statute are met.

¶14.    In order to satisfy the requirements of Section 13-3-31, a newspaper must either independently satisfy the statute, or be a section of a larger newspaper which meets those requirements. *See* ***Gannett River States Publ'g Corp. v. Jackson Advocate***, 856 So. 2d 247 (Miss. 2003).  The trial court found that *The Appeal* independently meets the requirements of Section 13-3-31.  Accordingly, the issue of whether or not *The Appeal* is a separate newspaper is rendered moot.

**B. Whether *the Appeal* is qualified under Section 13-3-31 of the Mississippi Code.**

¶15.    A circuit court's decision should be affirmed unless it lacks substantial evidence to support its decision or the decision was manifestly wrong. ***UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc.***, 525 So. 2d 746, 753-754 (Miss. 1987). "[W]e have said repeatedly that we will not disturb a trial judge's findings of fact where there is in the record substantial

6

evidence supporting the same," and that the findings of fact of a trial court "should and must be accepted unless they are manifestly wrong." ***Id.*** at 753 (omitting citations).

¶16.   All legal notices are required to be published "in a newspaper in this state." Miss. Code Ann. § 13-3-31(1)(a-h) and (2) (Rev. 2002). In pertinent part, Section 13-3-31 outlines the requirements that must be met for a newspaper to be qualified to publish legal notices:

> (a) Maintain[] a general circulation predominantly to bona fide paying subscribers within the political subdivision within which publication of such legal notice is required. The term "*general circulation*" means *numerically substantial, geographically widespread, demographically diversified circulation to bona fide paying subscribers*. In no event shall the term "general circulation" be interpreted to require that legal notices be published in a newspaper having the greatest circulation. The term "*bona fide paying subscribers*" means persons who have subscribed at a subscription *rate which is not nominal*, whether by mail subscriptions, purchases through dealers and carriers, street vendors and counter sellers, or any combination thereof, but *shall not include free circulation, sales at a token or nominal subscription price and sales in bulk for purposes other than for resale for individual subscribers.*
>
> (b) *Maintains a legitimate list of its bona fide paying subscribers* by the following categories where applicable:
> (i) *Mail subscribers*;
> (ii) *Dealers and carriers*; and
> (iii) *Street vendors and counter sellers.*
>
> (c) *Is not published primarily for advertising purposes* and has not contained more than seventy-five percent (75%) advertising in more than one-half (½) of its issues during the period of twelve (12) months next prior to the first publication of any legal notice . . . .
>
> (d) *Has been established and published continuously for at least twelve (12) months* next prior to the first publication of such matter to be published, *is regularly issued at stated intervals no less frequently than once a week, bears a date of issue, and is numbered consecutively . . . .*
>
> (e) *Is issued from a known office of publication, which shall be the principal public business office of the newspaper and need not be the place at which the newspaper's printing presses are physically located. A*

7

*newspaper shall be deemed to be "published" at the place where its known office of publication is located.*

> (f) *Is formed of printed sheets.* [. . . .]

> (g) *Is originated and published for the dissemination of current news and intelligence of varied, broad and general public interest, announcements and notices, opinions as editorials on a regular or irregular basis, and advertising and miscellaneous reading matter.*

> (h) *Is not designed primarily for free circulation or for circulation at nominal rates.*

> (2) "Newspaper," as used in this section, shall not include a newspaper . . . [published by or for a specialized] group or class of citizens, or which primarily contains information of a specialized nature rather than information of varied, broad and general interest to the general public, or which is directed to any particular geographical portion of any given political subdivision within which publication of such legal notice is required, rather than to such political subdivision as a whole.

Miss. Code Ann. § 13-3-31 (Rev. 2002) (emphasis added). The trial court found that *The Appeal* met all the aforementioned requirements.

¶17. *The Times* argues that *The Appeal* does not satisfy Section 13-3-31(e), which requires that the newspaper be issued from a "known office of publication which shall be the principal public business office of the newspaper . . . ." Miss. Code Ann. § 13-3-31 (Rev. 2002). *The Times* asserts that *The Appeal*'s principal public business office is at *The Commercial Appeal* in Memphis, Tennessee. As support, *The Times* points out that *The Appeal*'s subscribers in DeSoto County receive their billing statements from *The Commercial Appeal,* and payments are made to the Memphis Publishing Company. Additionally, the Memphis Publishing Company pays *The Appeal*'s employees and covers the utility bills at the Southhaven office.

Furthermore, all of the contact information listed within *The Appeal* has Memphis area codes. *The Appeal*'s printing presses also are located in Memphis.[6]

¶18.    At trial, *The Appeal* submitted that its principal public business office is located in Southaven, and that it plans to expand this office from 3,000 to 10,000 square feet. As previously noted, *The Appeal* has more than twenty employees at the Southaven office, including a general manager, editor, advertising staff, advertising manager, advertising sales staff, a deputy editor, several reporters, clerical staff, and circulation staff consisting of a district manager and one or two field representatives. *The Appeal* claimed that subscription payments are made to the Memphis Publishing Company solely for accounting purposes, and that subscribers could make payment at the Southaven office if they chose to do so.[7]

¶19.    Although *The Times* presented evidence that some functions of publishing *The Appeal* were carried out in Memphis, we cannot say that the trial court was manifestly wrong in finding that *The Appeal* maintains an office distinct from *The Commercial Appeal*. *The Appeal* presented sufficient evidence to sustain the trial court's ruling that its principal public business office is in DeSoto County. Accordingly, we affirm the trial court's finding on this issue.

---

[6]  Section 13-3-31(1)(e) specifically states that the physical location of the printing press is not determinative of the office of publication or the principal public business office. Miss. Code Ann. § 13-3-31 (Rev. 2002).

[7]  The parties also cite opinions and letters by the Attorney General. We do not believe that it is necessary to address these documents to decide the issues presented.

**CONCLUSION**

¶20.    While *The Times* has standing to appeal, we affirm the trial court's ruling that *The Appeal* is qualified to publish legal notices pursuant to Section 13-3-31.   Additionally, because we find that *The Appeal* is a separate newspaper from *The Commercial Appeal*, the trial court did not apply Section 13-3-31 prematurely.

¶21.    **AFFIRMED.**

**SMITH, C.J., CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. DIAZ, P.J., AND GRAVES, J., CONCUR IN RESULT ONLY. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**