KING, C.J., for the Court.
 

 ¶ 1. Frank Garrison appeals from the judgment of the Chancery Court of Union County, which held that title to thirty mobile homes passed to Jimmy Garrison in a sale negotiated between the brothers. Frank raises two issues on appeal: (1) whether the chancellor erred by finding that title to the mobile homes passed to Jimmy, and (2) whether the chancellor erred by failing to vest the title to the mobile homes in Frank’s sons — Chris Earl and Josh Garrison. Jimmy argues that Frank denies having an ownership interest in the mobile homes in controversy and, thus, lacks standing to appeal the chancellor’s decision. Jimmy has filed a motion requesting this Court to dismiss Frank’s appeal. We find that Frank lacks standing to appeal the chancellor’s judgment and, therefore, grant the motion to dismiss this appeal.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On May 23, 2006, Frank agreed to sell Twin Creeks, a mobile home park, to his brother Jimmy for $800,000. Maxium, a company which Frank created using the names of his aunt, Mary Anderson, and his mother, Ann Starling, was listed as the owner of the real property. Anderson testified that Frank instructed her to sign a warranty deed and to prepare bills of sale for thirty mobile homes, transferring the property to Jimmy.
 

 ¶ 3. Maxium also financed the purchase for Jimmy. The deed of trust gave Maxi-um a security interest in the real property and all buildings and structures located on the property, which included the mobile homes. Anderson testified that she did not profit from the sale of Twin Creeks and the mobile homes. Later, on September 8, 2006, Anderson, on behalf of Maxi-um, transferred the deed of trust to Eagle Horn, one of Frank’s many business names.
 

 ¶ 4. After the sale was complete, Jimmy went to the tax assessor’s office to register the thirty mobile homes. The tax assessor informed Jimmy that only eight of the mobile homes had been previously registered with the office. However, the tax assessor recorded the other twenty-two mobile homes and allowed Jimmy to pay the taxes owed on all of the mobile homes.
 

 ¶ 5. As owner of the mobile home park, Jimmy collected ground rent from the tenants who owned their own mobile homes and collected rent from those tenants who were renting one of his thirty mobile homes. Jimmy used the rents collected to make his monthly payment of $11,309.34 on the loan that he obtained from Maxium.
 

 ¶ 6. Jimmy later negotiated to sell Twin Creeks and the thirty mobile homes to William and Vanessa Taylor for $1,225,000. Jimmy requested a payoff amount for the loan from Maxium and Eagle Horn. Frank provided Jimmy with a payoff amount. However, Frank informed Jimmy that the May 2006 transaction did not include the thirty mobile homes and threatened to sue if Jimmy attempted to sell the mobile homes to the Taylors.
 

 
 *906
 
 ¶ 7. On January 16, 2007, Jimmy filed a lawsuit against Frank for tortuous interference with a contract. Jimmy also requested that the chancellor grant a preliminary injunction, a temporary restraining order, and a declaratory judgment against Frank. The chancellor granted Jimmy’s request for a preliminary mandatory injunction against Frank, which enjoined Frank from interfering with the sale of Twin Creeks and the mobile homes. However, on March 15, 2007, Sandra Brown, Frank’s ex-wife, and Chris Earl and Josh, Frank’s adult sons, intervened in the lawsuit, claiming that they possessed an interest in the mobile homes.
 

 ¶ 8. Frank testified that the mobile homes never belonged to Anderson. Instead, he claimed that the mobile homes were titled in either his name or Sandra’s name. Frank and Sandra’s divorce records were admitted into evidence and showed that neither Frank nor Sandra listed Twin Creeks or the mobile homes as assets. Frank admitted that he transferred his interest in Twin Creeks to Anderson to hide his assets from Sandra during the divorce. He also testified that he transferred his interest in the mobile homes to his sons right before the divorce. Sandra testified that she was unaware that she owned any of the mobile homes until this lawsuit was filed.
 

 ¶ 9. Several witnesses testified on behalf of Jimmy. Anderson testified that she allowed Frank to use her name in his business dealings, on the condition that she would not get into any legal trouble. Anderson was not aware that she was listed as the owner of Twin Creeks until Frank told her. Anderson testified that Frank directed her to sign a warranty deed and the bills of sale for thirty mobile homes located in Twin Creeks. Cathy Cunningham, Jimmy’s office manager, testified that Frank instructed her to help prepare the bills of sale for the mobile homes. Cunningham testified that Frank provided her with a list of the serial numbers, makes, and models of the mobile homes to be sold. David Tutor testified that he previously attempted to purchase Twin Creeks and the mobile homes from Frank. Tutor testified that Frank offered to let him purchase Twin Creeks and the mobile homes for $800,000. However, the deal did not go through because Tutor was unwilling to pay Frank’s asking price.
 

 ¶ 10. On July 6, 2007, the chancellor found that Frank attempted to hide his ownership of Twin Creeks and the mobile homes. However, the chancellor did not find any evidence that Frank actually transferred his interest in the mobile homes to his sons. The chancellor found that Frank negotiated a sale with Jimmy and that title to Twin Creeks and the mobile homes passed to Jimmy in this transaction. Thus, the chancellor granted Jimmy’s request for a permanent mandatory injunction and ordered Frank to provide Jimmy with an unqualified payoff figure for Twin Creeks and the mobile homes.
 

 ¶ 11. Frank, Sandra, Chris Earl, and Josh filed a motion to reconsider, which the chancellor denied. Thereafter, Frank timely filed a notice of appeal. However, Sandra, Chris Earl, and Josh did not appeal the chancellor’s ruling.
 

 ANALYSIS
 

 ¶ 12. Whether a party has standing to appeal a trial court’s judgment is a question of law, which is reviewed de novo.
 
 DeSoto Times Today v. Memphis Publ’g Co.,
 
 991 So.2d 609, 611(116) (Miss.2008) (citations omitted).
 

 ¶ 13. “[Sjtanding is a ‘jurisdictional issue which may be raised by any party or the Court at any time.’ ”
 
 Id.
 
 (quoting
 
 City of Madison v. Bryan,
 
 763 So.2d 162, 166(¶ 20) (Miss.2000)). Under Mississippi law, a party has standing “to
 
 *907
 
 sue or intervene when they assert a color-able interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise authorized by law.”
 
 Id.
 
 at 612(¶8) (quoting
 
 Fordice v. Bryan,
 
 651 So.2d 998, 1003 (Miss.1995)).
 

 ¶ 14. On appeal, Frank does not claim an ownership interest in the mobile homes. Frank simply maintains that Anderson did not have title to the mobile homes; therefore, she could not convey the mobile homes to Jimmy. He also argues that the chancellor erred by failing to vest title of the mobile homes in his sons-Chris Earl and Josh. In his request for relief, Frank asks this Court “to reverse the [cjhancellor’s decision and award ownership of the units to his sons ..., the holders of [the] bill of sales.... ” It is important to note that neither Chris Earl nor Josh have joined Frank in this appeal.
 

 ¶ 15. Frank does not claim an ownership interest in the mobile homes. Frank has failed to assert an interest in the subject matter of this litigation and has failed to show this Court how he has experienced an adverse effect from the chancellor’s judgment. Therefore, we find that Frank lacks standing to raise these issues on appeal. In the absence of standing to raise these issues on appeal, there is no justifiable matter before this Court for resolution. Thus, we grant the motion to dismiss this appeal.
 

 ¶ 16. THIS APPEAL IS DISMISSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.