# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-CA-00471-SCT

*CLARKE COUNTY, MISSISSIPPI*

*v.*

*QUITMAN SCHOOL DISTRICT*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/02/2022 |
| TRIAL JUDGE: | HON. CHARLES E. SMITH |
| TRIAL COURT ATTORNEYS: | DON O. ROGERS, III |
| | WILLIAM C. HAMMACK |
| | E. GREGORY SNOWDEN |
| | RICHARD GERALD NORRIS, II |
| | ROBERT H. COMPTON |
| COURT FROM WHICH APPEALED: | CLARKE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | RICHARD GERALD NORRIS, II |
| | WILLIAM C. HAMMACK |
| ATTORNEYS FOR APPELLEE: | ROBERT H. COMPTON |
| | JOHN G. COMPTON |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | ON DIRECT APPEAL: REVERSED AND REMANDED; ON CROSS-APPEAL: REVERSED AND REMANDED - 01/18/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This case presents the question of whether a school district is entitled to funds recovered by a county from the bankruptcy proceedings of a delinquent taxpayer. The taxes, if they had been collected in the normal time and manner, would have been used to fund the school district. During the process of funding the school district for the relevant years in question, the county board of supervisors anticipated the delinquency and adjusted the levy

of *ad valorem* taxes to compensate. As a result, the school district did not experience a shortfall related to the delinquency. The school district argues that it is entitled to its original portion of the recovered bankruptcy funds. The county argues that this would result in a double recovery outside the statutory scheme for public school funding and that the county is entitled to the funds. We find that the county is correct. Mississippi's scheme for funding public school districts is statutory and contains mechanisms to account for the ebb and flow of tax revenue collection on a year-by-year basis. The county's subsequent recovery of delinquent taxes through participation in bankruptcy proceedings is outside this statutory funding scheme.

### FACTS AND PROCEDURAL BACKGROUND

¶2.     The underlying facts of this case are not disputed. In 2016, BTH Quitman Hickory, LLC (BTH), a torrefaction and wood pellet company, objected to the Clark County Tax Assessor's valuation of its equipment. The Clarke County Board of Supervisors anticipated a collection delinquency of $320,537.66 that otherwise would be allocated to the funding of Quitman School District. Following the appropriate statutory procedure, the Board of Supervisors adjusted the levy of *ad valorem* taxes to compensate for the anticipated delinquency. As a result, for the 2016-2017 school year, Quitman School District was funded at a surplus of $111,372.40. In 2017, the board of supervisors again anticipated a delinquency of $311,985.50 related to collection of taxes owed by BTH that should go to the school district and again adjusted the levy to compensate. For the 2017-2018 school year, Quitman

2

School District was funded within 0.36 percent of the amount requested by the district and was able to meet its financial obligations.

¶3. For the 2018-2019 school year, the school district experienced a shortfall of $365,334. It did not elect—as is permitted by statute—to issue promissory notes to compensate. BTH filed for bankruptcy in late 2017. The portion of BTH's 2018 taxes (as assessed in bankruptcy proceedings) that would have been attributable to the school district was $28,986.[1]

¶4. In late 2018, Clarke County recovered $1,522,982.18 through BTH's bankruptcy proceedings.[2] Clarke County, the City of Quitman, and Quitman School District are the entities that would have received portions of these funds had the taxes been collected in the usual time and manner. Clarke County took the position that Quitman School District was not entitled to any of the recovered funds. Quitman School District demanded that the Clarke County Tax Collector disburse a portion of the monies to the school district, prompting the tax collector to file a complaint for interpleader in Clarke County Chancery Court, naming

---

[1] The board of supervisors was not able to file a claim in bankruptcy proceedings for 2018 because the deadline was prior to the time to assess and levy taxes for that fiscal year. The chancellor noted that "[t]he proposed findings of fact submitted by both parties do not include the specifics related to the budget submitted by QSD for the fiscal year of 2018-2019. No information was presented that the County anticipated any assessment appeals nor that any of the property owned by BTH was included that year for assessment purposes."

[2] The county incurred more than $400,000 in litigation costs related to recovering the delinquent taxes, including an appeal to this Court of the county's valuations of BTH's equipment and the subsequent bankruptcy proceedings. *See* ***Bd. of Supervisors of Clarke Cnty. v. BTH Quitman Hickory, LLC***, 255 So. 3d 1261 (Miss. 2018).

Clarke County, Quitman School District, and the City of Quitman as parties. The complaint asked that "this Court determine to whom said funds should be paid and disburse said funds accordingly." The chancery court granted the interpleader motion.

¶5.     The county claimed an undisputed amount of $614,198.28, which was the amount the county would have received had the taxes been collected in the normal time and manner. The county claimed an additional disputed amount of $699,048.82, the amount that would have gone to the school district originally. The county in the first instance had proposed that the chancellor disburse the undisputed amount of $209,735.08 to the City of Quitman, representing the amount that would have gone to the city had the taxes been collected in the normal time and manner.[3] It argued that "[t]he City of Quitman and the School District are differently situated" because

> While the Board of Supervisors was required to anticipate delinquencies that may affect the ad valorem tax effort for the School District and to adjust the levy accordingly to ensure the School District was appropriately funded, no such duty exists as [to] the levy for the City of Quitman and, as such, the Board of Supervisors did not adjust the levy for the City of Quitman. The City of Quitman, thus, unlike the School District, actually suffered a tax delinquency as a result of the BTH objections and bankruptcy.[4]

The county argued that "[i]n making a demand for the funds at issue, the School District seeks a windfall, seeks what amounts to a double-recovery[.]" The chancellor awarded the

---

[3] In proposing a division of the funds, the county first deducted the costs it had incurred in litigation. The ultimate amounts awarded by the chancellor reflect additional interest.

[4] The City of Quitman joined the County's position that the school district was not entitled to the funds in its answer to the interpleader motion.

undisputed $209,735.08 to the City of Quitman and dismissed the city and the tax collector from the action.

¶6. The county and the school district filed motions for summary judgment, both arguing entitlement as a matter of law to the disputed $699,048.82. Citing equity, the chancellor ordered that the school district "be awarded $365, 334.00, plus accrued interest" and that the county be awarded "all remaining funds plus interest." The chancellor explained that he found both parties' positions to be reasonable:

> The Court finds no guidance in the wording of the statutes to indicate what the legislature[']s intent would be in the factual scenario before the Court. The argument by QSD is reasonable as the monies originated from the levies determined by the Board of Supervisors for all three of the original defendants/claimants. These monies were deposited with the Tax Assessor and under normal circumstances, if paid directly by [BTH], the Tax Collector would have been obligated by statute to disburse the appropriate share of these funds to the QSD. The argument by the County is reasonable as the monies were not collected in the normal manner and time as other taxes are collected. These taxes were long overdue and litigation, funded solely by the County, was required to recover the monies currently held, along with that previously released to the City of Quitman.

The chancellor determined that a "fair and just decision . . . cannot be made . . . when applying the law alone":

> QSD argues that equity should aid it as it experienced a budgetary shortfall of $365,334.00 for the 2018-2019 school year and did not issue any promissory notes for the shortfall because it did not think it fair to the school district taxpayers. This being at a time when the County held the monies at issue which originally were levied in part for the QSD. Again, this is about the taxpayers' money, and this seems reasonable in the eyes of the Court. QSD also argues that if any surplus is received it has to be escrowed and goes to the reduction of the following year[']s budgetary needs. This is required by statute.

5

The County claims that equity requires the Court to deny QSD's claim to any of the monies. It argues that QSD did not participate in, nor pay any of the litigation fees needed to collect these funds. This is correct. That QSD received an amount in excess of its combined 2016-2017 and 2017-2018 budgetary needs. That to award them any money will be a windfall to QSD as it was over funded for these years. Additionally, it argues that if QSD incurred a shortfall for 2018-2019, it could have issued a shortfall promissory note to cover this deficiency. It further claims that this is not fair to the taxpayers as any monies awarded to QSD will create an automatic increase in its yearly base computation thereby increasing the annual taxes owed by the taxpayer. These arguments seem reasonable to the Court.

¶7. The chancellor discussed the unknown possibilities of how various hypothetical scenarios might play out:

In trying to reach a reasonable equitable decision the Court has considered possible "what ifs". When the County anticipated shortfalls for the first two years in question it wisely anticipated the shortfalls and adjusted the levies to account for this. What if, BTH miraculously walked in with a check and delivered it to the Tax Collector? Would QSD be entitled to receive both the monies from the original adjusted tax levy (which was paid by all the other taxpayers) and its[] pro rata share of the monies being paid by BTH[?] The County will say that QSD is being paid twice and this could be considered a windfall. QSD argues that it would not be a windfall as the funds would be escrowed, thereby reducing the budget for the following year. What if, QSD had issued shortfall notes for the 2018-2019 school year, would it still be entitled to a portion of the recovered funds? These are questions that the Court does not find a definitive answer for in the statutes as written.

¶8. The school district argued that the trial court should find that the county was in violation of its fiduciary duties by failing to turn over the money. In denying relief on this ground, the court held that "[t]he parties['] competing rights to the funds is the threshold issue before the Court. Once the Court has determined the claims and rights of the parties in dispute, then the statutory obligations and/or equitable considerations will attach, not before."

6

¶9.    The parties cross-appealed the chancellor's ruling, each arguing entitlement to the entirety of the funds in question.

**STANDARD OF REVIEW**

¶10.    Summary judgment rulings are reviewed *de novo*. ***Miss. Hub, LLC v. Baldwin***, 358 So. 3d 305, 307 (Miss. 2023). Questions of statutory interpretation also are reviewed *de novo*. ***HWCC-Tunica, Inc. v. Miss. Dep't of Revenue***, 296 So. 3d 668, 673 (Miss. 2020).

**DISCUSSION**

¶11.    Both Clarke County and Quitman School District argue that they are entitled to the recovered funds under the relevant statutes. If a statute "is not ambiguous, the court should simply apply the statute according to its plain meaning and should not use principles of statutory construction. Whether the statute is ambiguous or not, the ultimate goal of this Court is to discern and give effect to the legislative intent." ***Wayne Cnty. Sch. Dist. v. Morgan***, 224 So. 3d 539, 542 (Miss. 2017) (quoting ***Miss. Dep't of Transp. v. Allred***, 928 So. 2d 152, 154 (Miss. 2006)). "[I]f a statute is ambiguous or silent on a specific issue, statutory interpretation is appropriate." ***Miss. Dep't of Revenue v. SBC Telecom, Inc.***, 306 So. 3d 648, 652 (Miss. 2020) (alteration in original) (internal quotation marks omitted) (quoting ***Williams v. Williams (In re Guardianship of Duckett)***, 991 So. 2d 1165, 1181 (Miss. 2008))."The primary rule of [statutory] construction is to ascertain the intent of the legislature from the statute as a whole and from the language used therein." ***Id.*** (alteration in original) (internal quotation marks omitted) (quoting ***Bailey v. Al-Mefty***, 807 So. 2d 1203,

1206 (Miss. 2001)). When interpreting a statue a court must "give[] effect to the plain meaning of each word and phrase." *Gilmer v. State*, 955 So. 2d 829, 835 n. 1 (Miss. 2007). "[C]ourts of equity cannot modify or ignore an unambiguous statutory principle in an effort to shape relief." *Knox v. State*, 75 So. 3d 1030, 1035 (Miss. 2011) (internal quotation marks omitted) (quoting *Davis v. Smith (In Re Est. of Smith)*, 891 So. 2d 811 813 (Miss. 2005)).

¶12. The process for funding public school districts is found in Mississippi Code Section 37-57-1 to 113 (Rev. 2023). The question at hand is whether the monies recovered by Clarke County from the BHT bankruptcy proceedings fit within this statutory scheme such that the school district is entitled to the funds. The statutory procedures relevant to this determination are as follows.

### *The Role of the School Board*

¶13. First, the school board calculates the amount of taxes it may request through local contribution. Miss. Code Ann. § 37-61-9 (Rev. 2023). The base amount the school may request includes in part the amount of *ad valorem* taxes paid to the school district in the previous year for operations. Any *ad valorem* tax escrows must be subtracted from the total. The school board then submits to the levying authority—here the county board of supervisors—"a certified copy of an order adopted by the school board requesting an ad valorem tax effort in dollars for the support of the school district." Miss. Code Ann. § 37-57-104(1) (Rev. 2023).

### *Role of the Levying Authority*

8

¶14.   The board of supervisors then "shall determine the millage rate necessary to generate funds equal to the dollar amount requested by the school board." *Id.* If a delinquency is anticipated, the board of supervisors "shall levy an additional amount sufficient to cover anticipated delinquencies and costs of collection so that the net amount of money to be produced by such levy shall be equal to the amount which is requested by said school board." Miss. Code Ann. § 37-57-105 (Rev. 2023).

*Role of the Tax Collector*

¶15.   The tax collector has a statutory duty to collect the taxes allocated for the school district "at the same time and in the same manner as other taxes are collected" and to pay such tax collections "into the school depository, and report to the school board of the appropriate school district at the same time and in the same manner as the tax collector makes his payments and reports of other taxes collected by him." Miss. Code Ann. § 37-57-1(1)(a) (Rev. 2023). Further:

> The tax collector of each county shall make reports, in writing, verified by his affidavit, on or before the twentieth day of each month to the superintendent of schools of each school district within such county reflecting all school district taxes collected by him for the support of said school district during the preceding month. He shall at the same time pay over all such school district taxes collected by him for the support of said school district directly to said superintendent of schools.

Miss. Code Ann. § 37-7-333 (Miss. 2023).

*Escrow of Excess Revenue*

9

¶16.    To restrict the increase of taxes, school districts are required to escrow surplus funds for the "succeeding fiscal year." Miss. Code. Ann. § 37-57-107(3) (Rev. 2023). When excess revenue is generated above the requested amount:

> then it shall be the mandatory duty of the school board of the school district to deposit such excess receipts . . . into a special account . . . . Such excess funds shall be calculated in the budgets of the school districts for the purpose for which such levies were made, for the succeeding fiscal year. Taxes imposed for the succeeding year shall be reduced by the amount of excess funds available. Under no circumstances shall such excess funds be expended during the fiscal year in which such excess funds are collected.

*Id.*

### *Promissory Notes in the Event of a Shortfall*

¶17.    While the goal of the levy is to generate an amount equal to the school board's request, the practical realities of tax collection are that collections may fall below or above the amount requested. A statutory mechanism is therefore provided to account for shortfalls:

> In the event that the amount of revenue collected or estimated to be collected from local sources, on behalf of a school district during a fiscal year, is less than the amount provided for in the duly adopted budget of said school district for the fiscal year, then the school district may issue promissory notes in an amount and in the manner set forth in Section 27-39-333, not to exceed the estimated shortfall of revenue from local sources, but in no event to exceed twenty-five percent (25%) of its budget anticipated to be funded from the sources of the shortfall for the fiscal year.

Miss. Code Ann. § 37-57-108 (Rev. 2023).

¶18.    Here, all of the above statutory procedures were followed except that the school district elected not to issue promissory notes for the $365,334 shortfall in the 2018-2019 school year.

10

¶19. Clarke County argues that the plain language of the statutory provisions is unambiguous. When the provisions are read together as a whole, the statutory funding scheme entitles and empowers the school district to receive *that year* an amount equal to the budget request. This is accomplished through the levy of *ad valorem* taxes calculated to raise the amount of money requested through the receipt of such taxes collected in the normal time and manner and delivered monthly to the superintendent and through the option of issuing promissory notes in the event of a shortfall in tax collection. The statute does not contemplate the receipt of delinquent funds collected years later in bankruptcy proceedings. Instead, the statutory scheme places the school district in the protected position of receiving the equivalent of the delinquent funds at the time they should have been paid.

¶20. The board of supervisors is required to raise an amount equal to what has been requested by the school board *for that year* and effects this duty by raising the taxes of nondelinquent taxpayers as necessary. The plain language that grants authority for the school district to issue promissory notes in the event of the shortfall is for a delinquency that occurs "during a fiscal year." Miss. Code Ann. § 37-57-107(3) (Rev. 2023) The provision requiring that excess revenue be placed in escrow also contemplates a year-by-year funding scheme by providing that "[s]uch excess funds shall be calculated in the budgets for the school districts . . . *for the succeeding fiscal year*." *Id.* (emphasis added). Further, "[t]axes imposed *for the succeeding year* shall be reduced by the amount of excess funds available." *Id.* (emphasis added).

¶21.　Therefore, when considered in its entirety, the statutory scheme contemplates unambiguously that the requested budget will be funded at the time requested and does not take into account the delivery of delinquent tax funds recovered years later. For the three years in question, Quitman School District either was funded in excess of what was requested (due to adjustment of the millage rates) or had the option of exercising a statutory mechanism (promissory notes) for achieving full funding.

¶22.　Both Clarke County and the City of Quitman argued in the trial court that they were entitled to their respective portion of the recovered funds because the funds would have been received by them originally had the funds been collected at the normal time and in the normal manner. The school district is situated differently from the county and city. The county, like the City of Quitman, simply suffered through the delinquency without raising the shortfall from other sources. For the 2016-2017 and 2017-2018 school years, the school district did not experience the delinquency due to operation of the statutory mechanisms in place to fund school districts on a year-by-year basis regardless of delinquencies and tax collection shortfalls. Additionally, the county had the authority to pursue litigation to recover the delinquency it incurred, and the school district did not.

¶23.　Citing equity, the chancellor awarded the school district a portion of the recovered funds equal to the shortfall it had experienced in the 2018-2019 school year. But the Court is obliged to conduct this analysis through the lens of statutory construction. For the 2018-2019 school year, the statutory mechanism available to the school district to compensate for

12

the shortfall was to issue a promissory note under Section 37-57-108. While the school district did not choose to exercise this option, it nevertheless was available to the school district. The statutory scheme does not provide a mechanism for delivery of delinquent funds that originally would have gone to the school district. Instead, the relevant statutes mandate and/or empower the entities involved to prevent the yearly budget from being impacted by shortfalls. Given the unambiguous statutory mechanisms designed to ensure the school district's yearly funding, the funds subsequently recovered through BHT's bankruptcy proceedings are excluded from the school district's statutory funding scheme as currently designed.

¶24.    Quitman County notes that school boards are authorized "to have full control of the receipt, distribution, allotment and disbursement of all funds provided for the support and operation of the schools of such school district whether such funds be derived from state appropriations, local ad valorem tax collections, or otherwise." Miss. Code Ann. § 37-7-301(o) (Rev. 2023). It further points to Section 37-7-333, which requires the tax collector to report "on or before the twentieth day of each month" the "district taxes collected by him for the support of said school" and directs that the tax collector "shall at the same time pay over all such school district taxes collected by him." The school district argues that these provisions should be construed to mean that when the tax collector received and deposited the check from the bankruptcy proceedings years after the taxes would have been originally collected, she was mandated to deliver the school district's portion of the funds by the

twentieth day of the following month along with the delivery of the other regularly collected taxes. The school district argues also that, by refusing to turn over the money by the twentieth day of the month after receipt, the tax collector and Clarke County were in violation of their fiduciary duties, including duties under the Mississippi Ethics in Government Act as codified in Mississippi Code Section § 25-4-105.[5]

¶25.    The school district's reliance on these statutes is misplaced because the provisions contemplate delivery of taxes received in the normal time and manner. Here, the taxes levied and received in the normal time and manner for the relevant school years had been calculated to cover the deficiency the county anticipated in collecting from BHT. The chancellor was correct in holding that any fiduciary rights have not attached until a threshold determination has been made regarding the parties' competing rights to the funds.

¶26.    Quitman School District argues for the first time in its reply brief that the court lacked subject matter jurisdiction, citing *Tunica County v. Town of Tunica*, 227 So. 3d 1007 (Miss. 2017). It argues that Clarke County lacked standing to engage in the challenge before the chancellor because it lacks a property interest in the delinquent *ad valorem* taxes that would have gone to the school district if collected timely. Standing "is an aspect of subject matter

_____

[5] "(1) No public servant shall use his official position to obtain, or attempt to obtain, pecuniary benefit for himself other than that compensation provided for by law, or to obtain, or attempt to obtain, pecuniary benefit for any relative or any business with which he is associated." Miss. Code Ann. § 25-4-105(1) (Rev. 2018). The School District argues also that the chancellor's award of monies to the school district amounts to an unconstitutional donation in violation of article 4, section 66, of the Mississippi Constitution.

jurisdiction[.]" ***Kirk v. Pope,*** 973 So. 2d 981, 989-90 (2007) (citing ***Breeden v. Kirkpatrick & Lockhart LLP (In re The Bennett Funding Grp., Inc.)***, 336 F.3d 94, 102 (2d Cir. 2003)). It "may be raised by any party or the Court at any time. ***Id.*** (internal quotation mark omitted) (quoting ***City of Madison v. Bryan***, 763 So. 2d 162, 166 (Miss. 2000)). In ***Tunica County***, this Court found that a county lacked standing to challenge the constitutionality of a statute mandating that it share with a local town and school district a percentage of gaming fees collected. ***Tunica Cnty.***, 227 So. 3d at 1017.We found that the county lacked a property interest in the 3.2 percent gaming fee because to "have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." ***Id.*** (internal quotation mark omitted) (quoting ***Bd. of Regents v. Roth***, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)).

¶27.    The statute in ***Tunica County*** mandating that a percent of gaming fees must be shared with the town and school district is distinguishable from the statutory scheme for funding school districts. Both statutes contain mandatory directives to the county. In ***Tunica County***, the statute mandated that the county facilitate delivery of a set percentage of gaming fees to the local town and school district. But here, the statute mandates that the levying authority raise an amount to equal the budget requested by the school district on an annual basis. The mechanism for accomplishing this directive is the annual levy of *ad valorem* taxes at a rate determined by the levying body, adjusted up in the event of a delinquency or down in the

15

event of an excess. The statute does not mandate that delinquent taxes recovered by the county outside of this statutory scheme be delivered to the school district.

## CONCLUSION

¶28.    The statutory scheme for funding public school districts does not entitle school districts to receive delinquent taxes recovered years later in bankruptcy proceedings. The chancellor therefore erred by awarding the school district a portion of the funds recovered by the county. Because we find that the school district is not entitled to the funds, we do not arrive at the question of whether the chancellor erred by not awarding the school district prejudgment interest.

¶29.    **ON DIRECT APPEAL: REVERSED AND REMANDED; ON CROSS-APPEAL: REVERSED AND REMANDED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

16